SEWELL, J., concurs with CHESTER, J.

---

POLO et al. v. STEVENS, Superintendent of Public Works, et al.

(Supreme Court, Special Term, Monroe County.   December 17, 1909.)

1. PLEADING (§ 214*)—DEMURRER—ADMISSIONS.

In a complaint for injunction, relying wholly on what appears on the face of statutes, under which defendants are acting, to establish their unconstitutionality, an allegation of what is provided for by the statutes is nothing more than plaintiffs' construction thereof, and is not an allegation of fact admitted by a demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 527; Dec. Dig. § 214.*]

2. CANALS (§ 3*) — THE BARGE CANAL ACT — CONSTITUTIONALITY—"IMPROVEMENT."

Any alteration of existing canals which still preserves them as commercial highways connecting the lakes with the ocean in substantially the same location, affording facilities for increased usefulness, must be held to be an improvement, if so declared by the Legislature pursuant to Const. art. 7, § 10, authorizing the improvement of canals in such manner as the Legislature may provide by law, and the nature and extent of the improvement is clearly a question for it alone, under such circumstances, and canal lands rendered no longer useful for canal purposes may, after the improvement, be disposed of by the state under existing laws, without infringing the prohibition of section 8 against the sale of the Erie and other canals, and hence the Barge Canal as outlined in Laws 1903, p. 332, c. 147, providing for the improvement of the Erie and other canals by canalizing certain rivers, but leaving the canals substantially as they were before as to their general location and navigation between the same termini, except that steam or other power will necessarily be substituted for the present use, must be regarded as an improvement of existing canals within the Constitution, and not to infringe the same, though contemplating the probable sale of several hundred miles of the present canals when rendered no longer necessary or useful.

[Ed. Note.—For other cases, see Canals, Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 4, pp. 3452–3460; vol. 8, pp. 7682, 7683.]

3. STATES (§ 152*)—BARGE CANAL BONDS—PROVISIONS FOR PAYMENTS—SUFFICIENCY.

If the annual tax provided for by Laws 1903, p. 332, c. 147, to pay the Barge Canal bonds issued pursuant thereto, levied only during the 18 years the bonds are to run and till they become due as provided therein, is sufficient, it complies with the provision of Const. art. 7, § 4, that such tax shall be sufficient to pay the bonds.

[Ed. Note.—For other cases, see States, Dec. Dig. § 152.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. PLEADING (§ 216*)—DEMURRER—DETERMINATION.

 The annual tax provided by Laws 1906, p. 701, c. 302, to pay the Barge Canal bonds issued pursuant thereto, cannot be held insufficient for the purpose in disposing of a demurrer to a complaint to enjoin the taking of land for canal purposes, based on such an assumption, if it is impossible for the court to say such is the case, assuming that substantial increases in the value of property will continue, and that an annual fixed tax will produce a larger return each year, and considering that no facts whatever are alleged as to the amount such an annual tax will produce or has produced, or as to the revenue which will accrue to the sinking fund.

 [Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 535–539; Dec. Dig. § 216.*]

5. CONSTITUTIONAL LAW (§ 48*)—VALIDITY OF STATUTES—PRESUMPTIONS.

 There is no presumption that an act of the Legislature violates the Constitution, and an act must be assumed to be valid till the contrary appears.

 [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. § 48.*]

6. STATUTES (§ 268*)—CONSTITUTIONAL LAW (§ 193*)—CURATIVE ACT—PROSPECTIVE OPERATION.

 It is competent for the Legislature to cure defects in a prior act, and, when cured, it becomes valid prospectively.

 [Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 360, 361; Dec. Dig. § 268;* Constitutional Law, Cent. Dig. § 536; Dec. Dig. § 193.*]

7. STATES (§ 152*)—BARGE CANAL BONDS—PROVISIONS FOR PAYMENT—DETERMINATION OF SUFFICIENCY BY COURT.

 If, allowing for the progressive increase in the total assessed valuation of the property of the state, the annual tax required by Laws 1909, p. 425, c. 241, amending Laws 1906, p. 701, c. 302, to be levied to pay the Barge Canal bonds, is not demonstrated to be insufficient, it cannot be so pronounced by the court in determining whether it complies with Const. art. 7, § 4.

 [Ed. Note.—For other cases, see States, Dec. Dig. § 152.*]

8. STATES (§ 152*)—BARGE CANAL BONDS—PROVISIONS FOR PAYMENT—SUFFICIENCY.

 Laws 1909, p. 425, c. 241, amending Laws 1906, p. 701, c. 302, directs for the payment of the Barge Canal bonds "an annual tax to pay, and sufficient to pay the interest on each bond issued under this act as it falls due, and to pay, and sufficient to pay, and discharge the principal of each bond within fifty years from the date thereof," and provides, as to the sinking fund, that "said fund shall be used solely for the purpose of paying the principal and interest of bonds issued in accordance with the provisions of this act." Held, that this met the objection that the amended act did not provide for payment of the bonds at maturity.

 [Ed. Note.—For other cases, see States, Dec. Dig. § 152.*]

9. EMINENT DOMAIN (§ 71*)—PROPERTY TAKEN FOR CANAL IMPROVEMENT—CERTAINTY OF PROVISIONS FOR COMPENSATION.

 Laws 1906, p. 701, c. 302, amending Laws 1903, p. 332, c. 147, relating to the construction of the Barge Canal, provides that contracts for the improvement may be made from time to time, provided that, together with the cost of the necessary lands, structures, and all other expenses of the work, they shall not in the aggregate exceed the amount of bonds authorized therefor, and the amount realized on the sale of the abandoned canal lands, etc. Held, that it was thereby made impossible to lawfully contract or incur obligations for the purchase of land or otherwise beyond the amount legally provided for their payment, and hence it pro-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vides with sufficient certainty compensation to the owner of private property taken for public use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 180–187; Dec. Dig. § 71.*]

10. PLEADING (§ 216*)—INJUNCTION BY LANDOWNERS—QUESTIONS PRESENTED ON DEMURRER TO COMPLAINT.

In disposing of a demurrer to a complaint for an injunction against the taking of land for the Barge Canal, on the ground of the invalidity of Laws 1903, p. 332, c. 147, as amended by Laws 1906, p. 701, c. 302, relating to its construction, plaintiffs are not in a position to raise the objection that the law did not, with sufficient certainty provide compensation, where they do not allege that there is now, or that there is likely to be, any deficiency in the funds provided to pay for the lands sought to be taken from them.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 535–539; Dec. Dig. § 216.*]

Suit by William Polo and another against Frederick C. Stevens, as State Superintendent of Public Works, and others. On demurrer to the complaint. Sustained.

Morgan & Pallace (Edwin A. Nash, of counsel), for plaintiffs.

Edward R. O'Malley, Atty. Gen. (Andrew E. Tuck, Deputy Atty. Gen., of counsel), for defendants.

FOOTE, J. This action is brought to enjoin the defendants from taking and appropriating for the state lands of the plaintiffs in the town of Ogden, Monroe county, adjoining the present Erie Canal for the so-called Barge Canal.

The action is based wholly upon the alleged unconstitutionality of the statute (chapter 147, p. 332, Laws 1903) and its amendments, under which the barge canals are now being constructed. The complaint alleges that the proper state officers have taken all the necessary steps required by the act to appropriate plaintiffs' lands for the canal; that defendant Stevens, as superintendent of public works, acting under the authority of the act, has entered into contract with the defendant Empire Engineering Company for performance of the work upon the section of the canal which includes plaintiffs' lands; and that it and the other defendants are about to enter upon and take possession of plaintiffs' lands and appropriate them for the state for the use of such canal without plaintiffs' consent and to their great and irreparable injury and without warrant or authority of law; also, that the said act of 1903 and the acts amendatory thereof are, and each of them is, contrary to and in violation of the Constitution of the state of New York and the Constitution of the United States, and, upon information and belief, that the improvement of the Erie Canal provided for by said act and the acts amendatory thereof direct and compel the sale and abandonment of about 330 miles of said canal as the same existed at the time of the adoption by the vote of the people and the taking effect January 1, 1895, of section 8 of article 7 of the state Constitution, as follows:

"The Legislature shall not sell, lease or otherwise dispose of the Erie Canal, the Oswego Canal, the Champlain Canal, the Cayuga and Seneca Canal, or the

Black River Canal; but they shall remain the property of the state and under its management forever."

It is next alleged that said acts are void for the further reason that they violate the debt and expenditure provisions of article 7 of the Constitution found in sections 10, 2, 3, and 4 of said article, which are set forth at large in the complaint. And finally it is alleged that said acts are void for the additional reason that they violate section 6 of article 1, which provides that private property shall not be taken for public use without just compensation. The prayer for relief is that defendants, their successors, servants, etc., be perpetually enjoined and restrained from entering upon or appropriating plaintiffs' lands or disturbing their possession thereof.

No other material fact is alleged in the complaint, and it will be seen that plaintiffs rely wholly upon what appears upon the face of the legislative acts in question to establish their invalidity, and not upon any extraneous facts whatever. The allegation that the improvement of the Erie Canal provided for by said acts directs and compels the sale and abandonment of about 330 miles of the present canal is nothing more than a statement of plaintiffs' construction of these statutes, and is not an allegation of fact deemed admitted by the demurrer, if the statutes do not properly bear that construction.

Upon the argument of the demurrer, the first ground urged by the learned counsel for plaintiffs against the validity of the act of 1903 is that it violates section 8 of article 7 by directing a sale of the lands of the present canals not used for the Barge Canal. The legislative act in question (chapter 147, p. 332, Laws 1903) is entitled:

"An act making provision for issuing bonds to the amount of not to exceed one hundred and one million dollars for the improvement of the Erie Canal, the Oswego Canal and the Champlain Canal, and providing for the submission of the same to the people to be voted upon at the general election to be held in the year 1903."

It provides, in substance, that the Erie Canal, the Oswego Canal, and the Champlain Canal shall be improved by canalizing the Hudson, Mohawk, Oswego, Oneida, and Seneca rivers. It is assumed that the court will take judicial notice of the location of these canals as they now exist and of the changes described and directed to be made in this act, and it is said that the total length of the barge canals is about 440 miles, of which about 220 miles will consist of canalizing the Hudson, Mohawk, Oswego, Oneida, and Seneca rivers, and about 200 miles of excavation through the land. About 110 miles will consist of an enlargement of some portions of the existing Erie or Oswego Canals. About 330 miles are new canal.

The act provides in section 5 that:

"Whenever any lands now used for canal purposes shall be rendered no longer necessary or useful for such purposes hereby directed, the same shall be sold in the manner provided by law for the sale of abandoned canal lands and the net proceeds thereof paid into the state treasury, and so much thereof as necessary applied to the cost of the new work."

It is contended that thus about 330 miles of the present canals will be sold, as they will no longer remain useful for canal purposes. It appears, however, that each of the three canals will remain substantial-

ly what they were before as respects their general location and as respects their affording means for navigating boats between the same termini. It is evident, however, that the towage of boats by means of horses from the bank can no longer be carried on. Some part of the canals will be in rivers and lakes, and the act makes no provision for towage from the banks. Steam, or other power, will necessarily be substituted for that now mainly in use. The Erie and the Champlain Canals were constructed under the authority of chapter 262, p. 301, Laws 1817, which was entitled an act "respecting navigable communications between the great western and northern lakes and the Atlantic Ocean." In 1821 there was incorporated in the Constitution a provision that:

"The Legislature shall never sell or dispose of * * * the said navigable communications or any part or section thereof, but the same shall be and remain the property of the state forever." Article 7, § 10.

In Rev. St. 1829, pt. 1, c. 9, tit. 9, the canals are described and designated, as follows:

"(1) The navigable communication connecting the waters of Lake Erie with those of the Hudson river, and all the side cuts, feeders and other works belonging to the state connected therewith, by the name of the Erie Canal.

"(2) That connecting the waters of Lake Champlain with those of the Hudson and the works belonging thereto by the name of the Champlain Canal.

"(3) * * *

"(4) That commencing at Syracuse and terminating in Oswego by the name of the Oswego Canal."

In the Constitution of 1846 the provision against disposing of the canals was incorporated in section 6 of article 7, in this language:

"The Legislature shall not sell, lease or otherwise dispose of any of the canals of the state, but they shall remain the property of the state and under its management forever."

In 1882 this section was amended so as to prohibit by name the sale, lease, or other disposition of the Erie, Oswego, Champlain, Seneca and Cayuga or Black River Canals, the purpose being to permit the sale of the other canals not named, to wit, the Chemung, Chenango, and the Genesee Valley Canals.

In the Constitution of 1894 this provision as amended in 1882 was continued as section 8 of article 7, with the addition that the prohibition against sale, etc., should not apply to the canal known as the Main and Hamburg Street Canal in the city of Buffalo. But at this time there was introduced into the Constitution for the first time a provision on the subject of improvement of canals, being section 10 of article 7, as follows:

"The canals may be improved in such manner as the Legislature shall provide by law. A debt may be authorized for that purpose in the mode prescribed by section 4 of this article, or the cost of such improvement may be defrayed by the appropriation of funds from the state treasury, or by equitable annual tax."

The question is: Is the proposed Barge Canal as outlined in the act of 1893 an improvement of the existing canals within the fair intent and meaning of the section last quoted? The purpose of the provision of the Constitution against the sale of these canals was con-

sidered by the Court of Appeals in the case of Sweet v. City of Syracuse, 129 N. Y. 316, 333, 341, 27 N. E. 1081, 1083, 29 N. E. 289, 291, and it was there said in the opinion of Judge O'Brien:

"What the framers of the Constitution intended by this provision was that the canal as a highway of communication should not be sold or leased, but remain the property of the state and forever under its management, in order to promote the commercial prosperity of the people."

And in the opinion of Judge Earl on the re-argument of the same case it is said:

"Now what was plainly meant by the language used in those sections? Manifestly, that the canals as highways of commerce connecting the lakes with the Atlantic Ocean should forever remain the property of the state and under its management. It meant nothing more and could have meant nothing more."

Having in view the purpose of the provision as so declared, what construction should be given to section 10 that the canals may be improved in such manner as the Legislature shall provide by law? Manifestly, any alteration of the existing canals which still preserves them to the state as highways of commerce connecting the lakes with the Atlantic Ocean in substantially the same geographical location, affording facilities for increased tonnage, and hence increased usefulness, must be held to be an improvement, if so declared by the Legislature. The nature and extent of the improvement is clearly a question for the Legislature alone under such circumstances, and no doubt lands of the present canal rendered no longer useful for canal purposes may, after the improvement is made, be disposed of by the state under existing laws, without infringing the prohibition of the sale of the canals, provided the navigable communication intended by the Constitution is still preserved to the people.

It is next urged that this statute, as amended by chapter 302, p. 701, Laws 1906, violates the debt and expenditure provisions of the Constitution found in sections 2, 3, 4, and 10 of article 7. These sections are as follows:

"Sec. 2. The state may, to meet casual deficits or failures in revenue or for expenses not provided for, contract debts, but such debts, direct or contingent, singly or in the aggregate, shall not at any time exceed one million of dollars."

Section 3 provides that the state may contract debts to repel invasion, suppress insurrection, or defend the state in war.

Section 4, so far as material, is:

"Except the debts specified in sections 2 and 3 of this article, no debts shall be hereafter contracted by or in behalf of this state, unless such debt shall be authorized by a law for some single work or object to be distinctly specified therein, and such law shall impose and provide for the collection of a direct annual tax to pay, and sufficient to pay, the interest on such debt as it falls due, and also to pay and discharge the principal of such debt within fifty years from the time of the contracting thereof. * * * The Legislature may provide for the issue of bonds of the state to run for a period not exceeding fifty years in lieu of bonds heretofore authorized but not issued, and shall impose and provide for the collection of a direct annual tax for the payment of the same as hereinbefore required."

This section further provides that no such law shall take effect until submitted to a vote of the people at a general election.

Section 10 is as follows:

"The canals may be improved in such manner as the Legislature shall provide by law. A debt may be authorized for that purpose in the mode prescribed by section 4 of this article, or the cost of such improvement may be defrayed by the appropriation of funds from the state treasury or by equitable annual tax."

At the time of the passage of the act of 1903, section 4 of article 7 required a state debt contracted under that section to be payable within 18 years, and the Barge Canal act of 1903 provided for the issuance of $101,000,000 of bonds to be so paid, but in 1905 this section of the Constitution was amended, changing this limitation from 18 to 50 years as above quoted. Only $2,000,000 of these bonds running 18 years were issued, and in 1906, by chapter 302, p. 701, Laws 1906, provision was made for issuing the remaining $99,000,000 of bonds to run for 50 years.

The original act of 1903 contained this provision:

"There is hereby imposed for each year after this act goes into effect until all the bonds issued under the authority of this act shall be due, an annual tax of twelve one-thousandths of a mill upon each dollar of valuation of the real and personal property in this state subject to taxation for each and every one million dollars or part thereof in par value of said bonds issued and outstanding in any of said fiscal years, the annual amount of such taxes to be computed by the Comptroller. * * * And the proceeds of said tax, after paying the interest due upon the outstanding bonds shall be invested by the Comptroller, under the direction of the commissioners of the canal fund, and together with the interest arising therefrom, shall be devoted to the sinking fund which is hereby created, payment from which shall only be made to the extinguishment of the indebtedness created by the sale of the aforesaid bonds, as the said bonds become due, and for no other purpose whatever."

When the term of these bonds was extended to 50 years by chapter 302, p. 701, Laws 1906, it became necessary to fix a different rate of annual tax, and accordingly it is provided in section 2 of that act as follows:

"The said bonds (that is, for ninety-nine million dollars to run for fifty years) shall not all be sold at one time, but they shall be sold in lots not exceeding in amount ten million dollars as the proceeds thereof may be required during the ensuing year to prosecute the work of the said improvement of the canals. There is hereby imposed for each year after this act goes into effect, until provision is fully made for the payment of the interest and principal of said bonds, a direct annual tax sufficient to pay said interest and principal within fifty years, to wit, a tax of four hundred eighty-one one-thousandths of a mill upon each dollar of valuation of real and personal property in the state subject to taxation. * * * The proceeds of such tax shall be invested by the Comptroller under the direction of the commissioners of the canal fund, and together with the interest arising therefrom the premiums received on the sale of said bonds and interest accruing on deposits of money received from the sale of said bonds or from miscellaneous sources, shall constitute a sinking fund which is hereby created. This fund shall be used solely for the purpose of paying the principal and interest of bonds issued in accordance with the provisions of this act."

The position of the learned counsel for plaintiffs is that the act of 1903 fails to conform to the requirements of section 4 of article 7 of the Constitution, in that it provides for the annual tax therein men-

tioned until the bonds are due only and not until they are paid, and that the act of 1906 does not provide a sufficient annual tax to pay the bonds to the amount of $99,000,000 therein authorized, with interest, within 50 years, and that the act does not itself provide for the actual payment of the bonds as required by the Constitution.

It is not alleged in the complaint that any bonds were actually issued under the act of 1903 to run for 18 years, but it was stated upon the argument that as matter of fact $2,000,000 of the bonds were so issued, and this, no doubt, sufficiently appears from the provisions of the act of 1906, authorizing the issuing of the remaining $99,000,000 to run 50 years. If the act of 1903 is defective in directing the annual tax to be levied only until the bonds are due, it would affect only the $2,000,000 of bonds issued under that act, and, as these bonds have been sold and the money received by the state and already expended in the work, it is difficult to see how plaintiffs may avail themselves of this objection to defeat the further progress of the work, provided the act of 1906 has authorized the issuance of the remaining $99,000,000 of bonds in a legal and constitutional manner. But it is not alleged nor claimed that the annual tax of twelve one-thousandths of a mill for each $1,000,000 of bonds issued will not be sufficient to pay $2,000,-000 of bonds issued under that act, if levied only during the 18 years the bonds are to run and until they become due, and, if such tax is sufficient, then the constitutional provision that it shall be sufficient to pay the bonds seems to have been complied with.

But plaintiffs undoubtedly rely more particularly upon the alleged defects in the act of 1906 relating to the remaining $99,000,000 of bonds, as to which they contend that the annual tax of four hundred eighty-one one-thousandths of a mill will not be sufficient to pay these bonds at maturity with the interest as it accrues, and upon the claim that the act itself does not expressly direct payment of the bonds as required by the Constitution.

It will be seen by the above quotation from section 2, c. 302, p. 702, Laws 1906, that the annual tax there imposed of four hundred eighty-one one-thousandths of a mill upon each dollar of valuation is for the whole $99,000,000 of bonds, and not, as in the previous act, for each $1,000,000 thereof issued and outstanding. To support the contention that this tax will be insufficient, the learned counsel for plaintiffs has submitted to the court a statement and computation which is claimed to demonstrate the insufficiency of this tax. It is based upon the sum of $8,015,090,722 as the total assessed valuation of the real and personal property in the state subject to taxation for the year 1906. A tax of one-half a mill upon this property it is said will produce $4,007,-545, while the interest upon $101,000,000 of bonds at 3 per cent. is $3,030,000, which deducted from the amount the tax will produce leaves only $977,545, applicable to pay the principal of $101,000,000 in 50 years. But this is far from a demonstration that this annual tax will be insufficient to pay the principal of the bonds at maturity. In the first place, the computation is based upon $101,000,000 of bonds, whereas this rate of tax relates only to $99,000,000 to be issued under that act. Moreover, the act provides for the issuance of these bonds in installments of not exceeding in amount $10,000,000 "as the pro-

ceeds thereof may be required during the ensuing year to prosecute the work of the said improvement of the canals." It will be some, and perhaps many, years before all these bonds are issued, but the annual tax of four hundred eighty-one one-thousandths of a mill begins at once and must be imposed every year "until provision is fully made for the payment of the interest and principal of said bonds." Meantime, the surplus of $977,545, or rather the larger sum produced by treating the amount of the bonds as $99,000,000 instead of $101,000,-000 will be paid annually into the sinking fund to be invested by the Comptroller, and the interest derived therefrom will be reinvested and so compounded. But this computation is based upon what is said to have been the assessed valuation of the real and personal property of the state for the year 1906. If we may take judicial notice of such matters, then we are informed that such assessed valuation has increased progressively each year from about $7,700,000,000 in 1905 to over $9,600,000,000 in 1909, and we may assume, and the Legislature no doubt had the right to assume, that substantial increases in such valuation will continue, and that an annual fixed tax will produce a larger return each year. In view of this and of the fact that no facts whatever are alleged in the complaint as to the amount such an annual tax will produce or has produced, or as to the revenue which will accrue to the sinking fund, it is clearly impossible for the court to say that the tax provided for will not be sufficient to meet these bonds at maturity. There is certainly no presumption that an act of the Legislature violates the Constitution. It must be assumed to be a valid act until the contrary appears.

If, however, it could be demonstrated that the annual tax provided for in the act of 1906 would prove insufficient to meet the principal of these bonds in 50 years, it would then be necessary to consider the effect of chapter 241, p. 425, Laws 1909, by which the act of 1906 was amended in some material respects, and by which a new rate of taxation was imposed to pay these bonds. This act took effect on the 22d day of April of the present year, the day that the summons in this action bears date, and we may assume, before the actual service thereof upon any of the defendants. It was certainly competent for the Legislature to cure defects, if any, found to exist in the act of 1906, and, when cured, it would then become valid prospectively, and we will proceed to point out the changes effected by the act of 1909. This act amended the act of 1906 so as to provide an annual tax of four one-thousandths of a mill on each dollar of valuation of the real and personal property of the state subject to taxation, for each and every $1,000,000, or fraction thereof, in par value of said bonds issued and outstanding during the fiscal year during which the amount of the tax is computed. No reference was made to this statute upon the argument. It amends section 2, c. 302, p. 702, Laws 1906, so as to read on the subject of the annual tax as follows:

"There is hereby imposed a direct annual tax to pay, and sufficient to pay, the interest on each bond issued under this act as it falls due, and to pay, and sufficient to pay and discharge the principal of each of such bonds within fifty years from the date thereof."

The learned Attorney General has submitted a computation which shows that it is necessary to raise the sum of $38,865.50 each year for 50 years for a sinking fund to pay the principal of $1,000,000 at the end of 50 years and to pay the interest thereon at the rate of 3 per cent. per annum. A tax of four one-thousandths of a mill on a valuation of $9,500,000,000 would produce $38,000. The assessed valuation for the year 1909 is said to be $9,666,118,675. Allowing for the progressive increase in the total assessed valuation of the property of the state according to past experience, this tax would seem to be sufficient. At all events, it is not demonstrated to be insufficient, and cannot be so pronounced by this court.

The act of 1909 also does away with the further objection urged by plaintiffs' counsel that the act of 1906 does not itself provide for the payment of these bonds at maturity. As the act now reads as amended, it directs "an annual tax to pay, and sufficient to pay, the interest on each bond issued under this act as it falls due, and to pay, and sufficient to pay, and discharge the principal of each bond within fifty years from the date thereof," and further on, referring to the sinking fund, it provides:

"Said fund shall be used solely for the purpose of paying the principal and interest of bonds issued in accordance with the provisions of this act."

The last contention urged against the validity of this legislation is that it does not, with sufficient certainty, provide compensation to the owner of private property taken for public use. The argument under this head is based principally upon the fact that the Legislature has directed that the Barge Canal be constructed, but has made no provision for paying more than $101,000,000, and in case the work ultimately costs more, as it may, there is no method provided for which owners of property condemned can be compensated after the $101,000,000 has been exhausted.

This argument was originally framed by eminent counsel at the hearing before the Attorney General in 1905, in which it was sought to induce him to authorize an action in the courts to have it determined that the act of 1903 was unconstitutional upon this and other grounds. But assuming that there was force in the argument at the time it was presented, in view of the fact that the act of 1903 directed the officers of the state to enter into contracts for this work without limitation as to the expense which might be incurred, the argument has been deprived of its force by chapter 302, p. 703, Laws 1906, which provides in section 3, as follows:

"Contracts for the said improvement of the canals may be made from time to time, provided that, together with the cost of the necessary lands, structures and waters and all other expenses of the work, they shall not, in the aggregate exceed the amount of bonds authorized by law for such improvement and the amount realized on the sale of the abandoned canal lands," etc.

It is therefore, now impossible for officials of the state to lawfully contract or incur obligations for the purchase of land or otherwise beyond the amount which has been legally provided for their payment. But, if this were not so, plaintiffs are not in a position to raise this objection, as it is not alleged in the complaint that there is now, or that

there is likely to be, any deficiency in the funds provided by the state to pay for the particular lands which the state is now seeking to take from the plaintiffs. If the court may take judicial notice of the amount of bonds already issued and of the contracts already let, as shown upon the brief of the learned Attorney General, then it appears that bonds to the amount of only $23,000,000 of the $101,000,000 have already been issued, and the total amount to become payable upon all the contracts already let is $49,821,824. Thus there remains ample provision for the payment by the state of the cost of plaintiffs' lands.

These views render it unnecessary to consider the further point made by the learned Attorney General, that the complaint does not show that plaintiffs are without adequate remedy at law, and that the present action cannot be maintained, because it is indirectly and in legal effect an action against the state, and the state has not consented to be sued in this form of action.

It follows that the demurrer of each of the defendants must be sustained with costs.