Charles Lambiase, J.
This is a motion by the State of New York to dismiss the above-entitled claim upon the following grounds: (1) That the claim does not state a cause of action; (2) that claimant lacks legal capacity to sue the State of New York in respect to the subject matter of the claim, and that the Court of Claims lacks jurisdiction to entertain the claim; (3) that an incurable defect of parties precludes the court from taking jurisdiction of the claim; and (4) that any claim which may have existed has been released. No other grounds for dismissal are urged.
It is alleged in the claim, among other things:
“ That this claim is for the permanent appropriation, pursuant to Article 5, Title 1 of the Public Authorities Law of the State of New York, Section 1001 et seq. of land, bed of St. Lawrence River, and water rights, including inherent and intrinsic water power in such river, all of which is more particularly defined herein, and to which the claimants allege original title *112 which has never been extinguished.” (Claim, par. 4.)
“ That the question which is the subject of this action is one of common and general interest to all St. Regis Indians and that the claimants are the duly elected Chiefs of the St. Regis Tribe of Mohawk Indians and bring this action against the State of New York individually as duly enrolled members of the St. Regis Tribe of Indians, as elected Chiefs of the said Tribe, and on behalf of all St. Regis Indians.” (Claim, par. 3.)
“ That claimants make claim of immemorial rights arising prior to white occupation, consisting of immemorial possession and use including original title to those rights which are the subject of the appropriation by the State of New York.” (Claim, par. 5.)
And it further alleges that: “ The particulars of claimants’ damages are as follows: Permanent appropriation of land known as Barnhart’s Island located in the St. Lawrence River, County of St. Lawrence, State of New York; permanent appropriation of the bed of the St. Lawrence River surrounding the said Barnhart’s Island and within the respective boundaries of 1783 and 1822; and permanent appropriation of the water power inherent and intrinsic in the St. Lawrence River, totaling in all to the sum of Thirty-three Million Eight Hundred Thousand ($33,800,000.00) Dollars.” (Claim, par. 22.)
In General
As to ground No. 1, only the pleadings may be considered (Rules Civ. Prac., rule 106); and as to the remaining grounds, it is proper to consider affidavits in connection with the same; and, in fact, affidavits and documents have been submitted upon, have been used by' the parties, and have been considered by the court on these grounds.
In determining whether a complaint is legally sufficient, nothing but the pleading may be considered; affidavits are not permitted. (King v. Krischer Mfg. Co., 220 App. Div. 584; Purdy v. McGarity, 262 App. Div. 623.)
A pleading challenged for legal insufficiency must be construed broadly and liberally. (Civ. Prac. Act, § 275; Wainwright & Page v. Burr & McAuley, 272 N. Y. 130; Condon v. Associated Hosp. Service of N. Y., 287 N. Y. 411.)
The allegations of fact stated in the complaint are, for the purposes of this motion, assumed to be true (Locke v. Pembroke, 280 N. Y. 430; Hart v. Hart, 274 App. Div. 836); but not the legal conclusions drawn by the pleader nor his interpretation of any statutes involved in the action. (McCormick v. Westchester Light. Co., 142 Misc. 27.)
*113 In admitting the truth of a pleading challenged for legal insufficiency, only the material and relevant facts properly pleaded therein are assumed to be true. Conclusions of Law or the construction of a statute or the state of the laAv are not admitted (Hanna v. Lichtenhein, 225 N. Y. 579; Pelo v. Stevens, 66 Misc. 35); nor does the motion challenging legal sufficiency admit facts of which the court will take judicial notice as being untrue. (Baxter v. McDonnell, 18 App. Div. 235.)
A pleader must plead facts, not conclusions. (Walrath v. Hanover Fire Ins. Co., 216 N. Y. 220, 224.) A conclusion without the facts is an immaterial allegation; a conclusion of law is unavailing for any purpose. (Greeff v. Equitable Life Assur. Soc., 160 N. Y. 19, 29; Maylender v. Fulton County Gas & Elec. Co., 131 Misc. 514, 517; Malcolm E. Smith, Inc., v. Zabriskie, 84 N. Y. S. 2d 362.)
We shall consider the particular grounds for dismissal in the order hereinbefore set forth:
Ground No. 1: The claim does not state a cause of action.
This ground for the motion presents a question as to the nature of claimant’s title or interest less than title, if any, which has been pleaded in the claim. Concededly we are not dealing with “ Reservation Lands ”.
Applying the foregoing established principles of construction to the allegations of the claim, we have concluded that the claim alleges “ Original Indian Title ” and “ Recognized Indian Title ”, and alleges further that either is compensable. The State of New York denies that claimant has any compensable interest.
‘1 The nature of the Indian title to lands on this continent was established by the system of public law adopted by European nations regulating their possessions here. It became the recognized principle that discovery followed by possession vested in the sovereign by whose subjects the discovery was made the absolute title to the soil of the lands Avithin the limits of the discovered territory, subject however to the right of occupation by the Indian tribes, which could only be extinguished by their voluntary consent, unless forfeited under the laws of war. It Avas a necessary sequence to the claim that the sovereign had the ultimate title to the soil, that the right to extinguish the Indian occupation was exclusively vested in the sovereign. The Indians were held to be incapable of alienating their lands except to the crown, and all purchases made from them without its consent, were regarded and treated as absolutely void. The title of the croAsm was subject to grant, but a grant from the crown only conveyed the fee subject to the right of Indian occu *114 pation and when that was extinguished under the sanction of the crown, the possession then attached to the fee and the title of the grantee was thereby perfected. These general principles were announced by Chief Justice Marshall in the great case of Johnson v. M’Intosh (8 Wheat. 543), which has ever since been regarded as a sound exposition of the nature of Indian titles.
“ The several colonial charters undertook to define the territorial limits of the respective colonies. In many cases the boundaries were indefinite and in some cases conflicting. The crown, however, except in case of proprietary charters, exercised the right of making grants of unappropriated lands within the chartered limits of the colonies, although the right of soil and jurisdiction was vested in the colonial governments. On the declaration of independence, the colonies became sovereign states. They were so acknowledged by the treaty of peace of 1783, and Great Britain by that treaty ‘ relinquished all claims to the government, property and territorial rights ’ within the several colonies. It is the received opinion that the colonies succeeded to the title of the crown to all the ungranted lands within their respective boundaries, with the exclusive right to extinguish by purchase the Indian title, and to regulate dealings with the Indian tribes.” (Seneca Nation of Indians v. Christie, 126 N. Y. 122, 135-136. See, also, Tee-Hit-Ton Indians v. United States, 348 U. S. 272.)
This right of occupation by the Indian tribes is not a property right, but amounts to a right of occupancy which the sovereign grants and protects against intrusion by third parties, but which right of occupancy may be terminated and such lands fully disposed of by the sovereign itself without any legal enforcible obligation to compensate the Indian. (Tee-Hit-Ton Indians v. United States, supra, p. 279.) And “ The manner, method and time of such extinguishment raise political, not justiciable, issues.” (United States v. Santa Fe Pacific R. R. Co., 314 U. S. 339, 347.) In our opinion, “ Original Indian Title ” is not compensable. However, claimant tribe contends that its interest and rights in the land in question were sufficiently recognized by Great Britain and by Canada in their times and by the State of New York so as to make such interest and rights compensable; and that the Indians of New York in reference to compensability for the taking of their lands in this State have the protection of the State Constitution (art. I, § 13) and of the Indian Intercourse Act (U. S. Code, tit. 25, § 177).
Where the sovereign has declared that thereafter Indians are to hold certain lands permanently, compensation must be paid *115 for subsequent taking. There is no particular form for recognition of Indian right of permanent occupancy. It may be established in a variety of ways, but there must be the definite intention by constituted authority to accord legal rights, not merely permissive occupation. (Tee-Hit-Ton Indians v. United States, supra, pp. 278-279; Hynes v. Grimes Packing Co., 337 U. S. 86, 101.)
The State of New York contends that at a treaty held in the city of New York on May 31, 1796 (7 U. S. Stat. 55), the Seven Nations of Canada represented by members of the Caughnawaga and St. Regis Tribes ceded and released to the State of New York any and all interest to lands within the State of New York, excepting certain lands set aside as a reservation for the St. Regis Tribe of Mohawk Indians, which lands are not concerned in this claim; and that Barnhart’s Island and any interest therein which claimant tribe may have had was extinguished by the treaty and was ceded to the State of New York. Claimant, the St. Regis Tribe of Mohawk Indians, does not deny the making of the treaty, but maintains that upon the record such island was not ceded, and its title to and interest therein was not extinguished by said treaty.
We believe that a triable issue on title or interest is presented which may not be summarily disposed of, and we deny the motion on this specific ground.
Ground No. 2: Claimant lacks legal capacity to sue the State of New York in respect to the subject matter of the claim, and that the Court of Claims lacks jurisdiction to entertain the claim.
It is the contention of the State that unless there is statutory authority no action for damages caused by the appropriation of tribal property may be brought by a tribe as an entity, or by an individual in a representative capacity on behalf of the tribe, or by an individual on behalf of himself insofar as his interests in such tribal property are concerned. This point made by the State is not disputed by the claimant, and in its main brief (p. 38) claimant states: “ That an Indian tribe may not sue as a legal entity except by statutory permission is not disputed.” However, it contends that the Court of Claims Act of the State of New York and constitutional provisions relative to the Court of Claims, section 30 of the Highway Law, and subdivision 10 of section 1007 of the Public Authorities Law provide this statutory permission and authority, and that the interests involved in this claim are within the jurisdiction of this court.
Subdivision 2 of section 30 of the Highway Law provides as follows: ‘ ‘ The superintendent of public works, for and in behalf of the people of the state of New York may acquire by appro *116 priation any and all property necessary for the construction, reconstruction and improvement of state highways and bridges or culverts on the state highway system, including the appropriation of property for drains, ditches, spoil banks, gravel pits and stone quarries; also for the removal of obstructions, improvement of sight distances; also for appropriation of property for the reconstruction of existing highway-railroad separation structures and for the separation of highway-railroad grades on newly laid-out highways; and for other purposes to improve safety conditions on the state highway system. The term 1 property ’ as used in this section is defined to include lands, waters, rights in lands or waters, structures, franchises and interest in land, including lands under water and riparian rights, and any and all other things and rights usually included within the said term and includes also any and all interests in such property less than full title, such as easements permanent or temporary, rights-of-way, uses, leases, licenses and all other incorporeal hereditaments and every estate, interest or right legal or equitable. The manner of appropriation, including method of obtaining possession, shall be as hereinafter set forth. ’ ’ And subdivision 14 of section 30 of said law provides in pertinent part: “ The owner of any property, easements, interests or rights appropriated, may present to the court of claims a claim for the value of such property appropriated and for legal damages, as provided by law for the filing of claims with the court of claims.”
Subdivision 7 of section 1007 of the Public Authorities Law, provides, among other things: ‘ ‘ The authority may, at its option, acquire such real property within the state of New York, under the general condemnation law or, in the event it is a licensee of the federal power commission it may acquire such real property as is necessary for its purposes through the exercise of the right of eminent domain as provided in section twenty-one of the federal power act ”. And subdivision 10 of section 1007 of the Public Authorities Law, provides among other things: “ Claims for the value of the property appropriated and for legal damages caused by any such appropriation shall be adjusted and determined by the superintendent with the approval of the authority, or by the court of claims as provided in said section thirty. When a claim has been filed with the court of claims, the claimant shall cause a copy of such claim to be served upon the authority and the authority shall have the right to be represented and heard before said court.”
A statute intending to authorize the exercise of the right of eminent domain would be clearly unconstitutional where it makes *117 no provision for compensation to those whose private property is to be taken for public use. While payment need not precede the taking, the provision for compensation must not only preexist, but it must be so definite and certain as to leave nothing open to litigation except the title to the property taken and the amount of damages which the owner may recover. (Litchfield v. Bond, 186 N. Y. 66, 74; Sweet v. Rechel, 159 U. S. 380, 406.)
The foregoing cited and quoted statutes authorize the exercise of the power of eminent domain and would be clearly unconstitutional if they made no provision for compensation to those whose private property is to be taken for public use. (Litchfield v. Bond, supra.) The Constitution of the State of New York provides that just compensation shall be paid for any taking. (N. Y. Const., art. I, § 7.) There is no restriction or limitation set forth in the quoted statutes upon the legal status of the owner from whom the property is taken, and implicit therefor, if not explicit, therein is the right of an owner to have his day in court to prove his title or interest and to establish his damages.
In our opinion, therefore, the statutes above cited and quoted constitute statutory authority for claimant, the St. Regis Tribe of Mohawk Indians, to sue its alleged claim. It is true that under section 8 of the Court of Claims Act the State of New York has waived its sovereign immunity. That waiver, however, merely applies to areas where before its enactment a definition of sovereign immunity might have been interposed (Fullerton v. City of Schenectady, 285 App. Div. 545, affd. 309 N. Y. 701); and by section 9 of the same act jurisdiction of the broadest character in connection therewith is conferred on the Court of Claims. Needless to say it must not be construed that thereby the State concedes its liability herein in favor of the claimant, or creates a cause of action in its favor where none existed prior to said enactments. The Court of Claims Act leaves open the question of the State’s liability and merely gives a remedy to enforce a liability and submits the State to the jurisdiction of the court subject to its right to interpose any lawful defense. (Smith v. State of New York, 227 N. Y. 405, 409; McMahon v. State of New York, 178 Misc. 865.)
The motion must be and hereby is denied on this particular ground. We limit our decision on this ground specifically to the cited and quoted statutes as they authorize or may authorize the exercise of the right of eminent domain.
GrBomro No. 3: An incurable defect of parties precludes the court from taking jurisdiction of the claim.
It is the position of the State of New York that if any Indian title to Barnhart’s Island for the alleged appropriation of *118 which claimant has filed this claim was existent at the time of the appropriation of the Island, claimant tribe, the St. Regis Tribe of Mohawk Indians, is not the only Indian tribe with an interest in the Island; that within the St. Regis Tribe of Mohawk Indians there are two tribes, viz., that on the American side of the international boundary line, and the other on the Canadian side of said line (Matter of Herne, 133 Misc. 286, 287); and that assuming arguendo and for that purpose only claimant tribe has an interest, then the Canadian St. Regis Indian Tribe and possibly the Caughnawagas, another Indian tribe, which was also represented at the making of the Treaty of 1796, also have an interest and must be represented herein, failing which there is an incurable defect of parties claimant which precludes the court from assuming jurisdiction and adjudicating this claim.
Claimant tribe, on the other hand, contends that assuming arguendo that it does not represent all outstanding interests, nevertheless its claim for an undivided interest may be heard, and that the State, under existing practice, has the right to interplead the holder of all other outstanding interests. While we do not agree entirely with claimant tribe in its reasoning, we agree with it in result on this point.
Section 194 of the Civil Practice Act is as follows: “ § 194. Necessary joinder of parties. Of the parties to the action those who are united in interest must be joined as plaintiffs or defendants except as otherwise expressly prescribed in this act. If the consent of any one who should be joined as a plaintiff cannot be obtained he may be made a defendant, the reason therefor being stated in the complaint.” Assuming, as is contended by the State of New York and not denied by claimant, that the St. Regis Indian Reservation is located partly in the town of Bombay, U. S. A., and partly in the Dominion of Canada; that one set of chiefs is chosen for the territory and inhabitants on the American side of the international boundary line and another and different set for the people and territory on the Canadian side; that the government, the officials and all regulations are entirely separate and distinct; that no jurisdiction is exercised or attempted beyond the international boundary line by either; and that the two tribes have a separate governmental existence (Matter of Herne, supra), and that the foregoing section applies to the claimant tribe’s situation, it is barred completely from any remedy and is unable to enforce its claim if it has anv claim. Claimant tribe cannot sue in Canada as the claim must be brought in the Court of Claims. The State of New York has no jurisdiction over the St. Regis Indian Tribe of Canada, and an order to bring them in and to make them a *119 party to this action would he futile and meaningless. “It is apparent, therefore, that this section of the Civil Practice Act has limitations and must he interpreted so as to direct an enforceable act. To command a party to be brought in where there is no process to bring him in and no jurisdiction over him lacks sense. Parties who are united in interest must be joined as plaintiffs or be brought into the action as defendants, pursuant to this section 194 of the Civil Practice Act, where they are within the jurisdiction of the court, so that the judgment may effectually bind them. "Where any of such parties are without the State and cannot be served or brought into the action effectually, they need not be parties, and an order would be improperly granted which directed that they be made parties. This is the interpretation which the courts have given to this section and which we approve. [Citing cases] ”. (Keene v. Chambers, 271 N. Y. 326, 330; Howard v. Arthur Murray, Inc., 281 App. Div. 806, and cases cited therein.)
"We are of the opinion that the claim may not be dismissed upon this specific ground, and we therefore deny the motion as particularly based thereon.
Ground No. 4: Any claim which may have existed has been released.
On the basis of the filed claim, affidavits and documents submitted herein and used by the parties in their argument and in their submission of this motion, it appears to us that a question of fact is involved, the State claiming that any claim in the claimant tribe which may have existed has been released, and claimant tribe claiming that its claim has not in any way been released and as of the date of the appropriation was and now is valid and subsisting. The question, therefore, it seems is one of fact to be resolved upon a trial and may not be disposed of summarily upon this motion. The motion, therefore, should be denied as based on this enumerated ground.
The motion, therefore, must be and hereby is in all respects denied.
Submit order accordingly.