The CANADIAN ST. REGIS BAND OF
MOHAWK INDIANS, Plaintiff,

The United States of America,
Plaintiff–Intervenor,

v.

The State of NEW YORK, George E. Pataki, as Governor of the State of New York,[1] the County of St. Lawrence, the County of Franklin, the Village of Massena, the Town of Massena, the Town of Bombay, the

Town and Village of Fort Covington, Farmers National Bank, n/k/a Key Bank of Northern New York, N.A., Nationwide Mutual Insurance Co., Niagara Mohawk Power Co., Walsh Realty Corp. and Canadian Railways, Defendants.

The Canadian St. Regis Band Of
Mohawk Indians, Plaintiff,

The United States of America,
Plaintiff–Intervenor,

v.

The State of New York, George E. Pataki, as Governor of the State of New York, St. Lawrence Seaway Development Corp., David W. Oberlin, Niagara Mohawk Power Co., and Power Authority of the State of New York, Defendants.

The St. Regis Mohawk Tribe, by the St. Regis Mohawk Tribal Council and the People of the Longhouse at Akwesasne, by The Mohawk Nation Council of Chiefs, Plaintiffs,

The United States of America,
Plaintiff–Intervenor,

v.

The State of New York, George E. Pataki as Governor of the State of New York, County of St. Lawrence, County of Franklin, Village of Massena, Town of Massena, Town of Bombay, Town and Village of Fort Covington,

---

**1.** In accordance with Fed.R.Civ.P. 25(d)(1), the court hereby substitutes George E. Pataki for Mario M. Cuomo in all three actions.

Key Bank of Northern New York, N.A., Nationwide Mutual Insurance Co., Niagara Mohawk Power Co., Canadian National Railways, Power Authority of the State of New York; et al. individuals, Defendants.

Nos. 82–CV–783, 82–CV–1114, 89–CV–829.

United States District Court,
N.D. New York.

May 30, 2001.

Sonosky Chambers Sachse & Endreson (Harry R. Sachse, of counsel), Washington, DC, for Plaintiff.

Indian Law Resource Center (Steven M. Tullberg, June Lorenzo, of counsel), Washington, DC, for Plaintiff The People of the Longhouse of Akwesasne by the Mohawk National Council of chiefs.

Hobbs Straus Dean & Walker (Hans Walker, Jr., Marsha K. Schmidt, of counsel), Washington, DC, for Plaintiff The St. Regis Mohawk Tribe by the St. Regis Mohawk Tribal Council.

Daniel J. French, United States Attorney, Syracuse, NY, for U.S.

United States Department of Justice–Environment & Natural Resources Division (Charles Jakosa, of counsel), Washington, DC, for Plaintiff–Intervenor The United States of America.

Eliot Spitzer, Attorney General of the State of New York (David B. Roberts, Howard L. Swickel, Asst. Attorneys General, of counsel), Albany, NY, for Defendants State of New York and the Governor of the State of New York.

David E. Blabey (Arthur T. Cambouris, Eileen P. Flynn, of counsel), New York City, for Defendant Power Authority of State of New York.

Hiscock & Barclay, LLP (Judith M. Sayles, of counsel), Syracuse, NY, for Defendants County of St. Lawrence, County of Franklin, Village of Massena, Town of Massena, Town of Bombay, Town and Village of Fort Covington, Key Bank of Northern New York, N.A., Nationwide Mutual Insurance Co., Niagara Mohawk Power Co., Canadian National Railways, and for Defendant Class.

## MEMORANDUM–DECISION AND ORDER

McCURN, Senior District Judge.

In this protracted land claim litigation, plaintiff tribes, as self-described descendants of the Village of St. Regis, seek a declaration of ownership and the right to possess approximately 12,000 acres of land in northern New York, plus damages for

almost 200 years of dispossession. The tribes and plaintiff-intervenor the United States principally contend that the subject land was reserved to the Indians of the Village of St. Regis in the Treaty with the Seven Nations, 7 Stat. 55 (1796), and that defendant State of New York's acquisition of the subject lands during a period from 1816 to 1845 contravened the Indian Nonintercourse Act, 25 U.S.C. § 177.[2] The tribes and the United States claim that title to the disputed property never properly passed to the State and, in turn, never properly passed to the other named defendants and members of the defendant class.

Defendants' instant Rule 12(b)(1) and (6) motions to dismiss variously assert that some or all of the claims alleged must be dismissed on a variety of grounds, including: (1) sovereign immunity, (2) lack of standing, (3) failure to state a claim upon which relief can be granted, (4) the equitable doctrine of laches, and (5) the doctrines of res judicata or collateral estoppel. For the reasons that follow, the motions to dismiss are granted to the extent that res judicata bars the United States and the St. Regis Tribe from asserting any Nonintercourse Act claims involving the 1824 conveyance. The motions to dismiss are denied in all other respects.

## BACKGROUND

Familiarity with the considerable history of these consolidated land claim actions is assumed but, for the sake of clarity and to refresh the parties' and the court's recollection, a review of the relevant procedural history and facts of each case is in order.

## I. 82–CV–783

On July 27, 1982, the Canadian St. Regis Band of Mohawk Indians, by their duly elected chief and council (Canadian Band or tribe),[3] commenced this class action seeking a declaration that the descendants of the Village of St. Regis own and are entitled to possess certain land reserved to them in the Treaty with the Seven Nations of Canada, 7 Stat. 55 (1796) (attached as Exh 1 to Dkt. No. 191). The claimed lands include a six-mile square tract located in northern New York State, as well as land on or near the Grasse River (*see* Amended Complaint, Dkt. No. 13, ¶¶ 24–25 & Exh A.). The amended complaint alleges that various appropriations of the subject land by defendant State of New York (the State) violate the Nonintercourse Act. The Canadian Band also asserts a claim pursuant to 42 U.S.C. § 1983, alleging that it was deprived of rights, privileges and immunities secured by the Constitution and laws of the United States because the claimed land was taken under color of law. In addition to recovering possession of the subject land, the Canadian Band seeks damages from the State for alleged waste, and against all defendants for alleged trespass and unlawful exclusion from the land. Pursuant to Fed.R.Civ.P. 23(b)(1)(B), the

---

**2.** The Indian Nonintercourse Act, also known as the Indian Trade and Intercourse Act, was enacted by the first Congress in 1790 and has been reenacted in substantially the same form by subsequent Congresses to the present date. 25 U.S.C. § 177 states in relevant part:

No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Consti-

tution ... under the authority of the United States.

**3.** The Canadian Band is now known as the Mohawks of Akwesasne. For the purposes of this decision, the court will refer to the tribe as the Canadian Band. In addition, the court's reference to the Indian plaintiffs as "tribes" is a matter of convenience and not meant to imply or confer any legal significance upon those groups.

court certified a defendant class in this action.[4]

## II. 82-CV-1114

Several months after filing 82-CV-783, the Canadian Band brought this action[5] against the State defendants, Niagara Mohawk Power Corporation and the New York Power Authority (the NYPA), among others,[6] seeking a declaration that it owns and is entitled to possess certain islands located in the St. Lawrence River. Specifically, the Canadian Band seeks to recover possession of the Croil Islands and Barnhart Island (*see* Amended Complaint, Dkt. No. 5, ¶¶ 21–23 and Prayer for Relief, ¶ 3), in addition to compensation for those submerged lands which were formerly part of Croil Island (*see id.* ¶ 24, Prayer for Relief, ¶ 6).[7] The amended complaint asserts that the State's acquisition of the islands violated the Indian Nonintercourse Act and the Treaty of Ghent, 8 Stat. 218 (1814). The Canadian Band also asserts a § 1983 claim, alleging illegal deprivation of its rights under the United States Constitution, and a Fifth Amendment takings claim

against the NYPA, the current possessor of the islands. In addition to the above stated relief, the Canadian Band seeks trespass damages for the alleged period of dispossession.

## III. 89-CV-829

On June 30, 1989, the St. Regis Mohawk Tribe by the St. Regis Mohawk Tribal Council (the St. Regis Tribe or tribe), and the People of the Longhouse at Akwesasne, by the Mohawk Nation Council of Chiefs (the Longhouse or tribe), commenced this defendant class action against the State and Municipal defendants, the NYPA and various individuals. Like the Canadian Band, the St. Regis Tribe and Longhouse land claims are predicated on violations of the Nonintercourse Act and the Treaty of Ghent, among others. The complaint seeks a declaration pursuant to 28 U.S.C. § 2201 declaring that the conveyances of land reserved in the Treaty of 1796, and the conveyances with respect to Croil, Barnhart and Long Sault Islands, among others, are null and void with no legal effect.

---

4. The defendant class consists of: The Governor and the State of New York (the State defendants), St. Lawrence and Franklin Counties, Village of Massena, Town of Massena, Town of Bombay, Town and Village of Fort Covington, Key Bank of Northern New York, the Nationwide Mutual Insurance Company, Niagara Mohawk Power Corporation and Canadian National Railways, individually and on behalf of all other persons who claim an interest in any portion of the subject lands, subject to certain limitations (the Municipal defendants). *See Canadian St. Regis Band of Indians v. State of New York*, 97 F.R.D. 453, 462 (N.D.N.Y.1983).

Additionally, Eva L. Kleinert, Helgar Perryon and Paul Perryon intervened as defendants and answered the amended complaint (*see* Answer, Dkt. No. 61), and consequently do not join in these motions to dismiss.

5. The court denied the Canadian Band's motion for certification of a plaintiff class in this

action and 82-CV-783, and dismissed all claims by the individual plaintiffs in both actions on standing grounds. *See Canadian St. Regis Band of Indians v. State of New York*, 573 F.Supp. 1530 (N.D.N.Y.1983). Thus, both 82-CV-783 and 82-CV-1114 only involve claims by the Canadian Band.

6. The court dismissed the Canadian Band's 5th Amendment takings claim against the St. Lawrence Seaway Development Corporation and its administrator. *See Canadian St. Regis Band of Indians v. State of New York*, 640 F.Supp. 203 (N.D.N.Y.1986).

7. The Croil Islands were formerly part of Croil Island or Baxter's Island. Croil Island was divided into several smaller islands when the Robert Moses Power Dam and the Long Sault Spillway Dam were constructed as part of the St. Lawrence Seaway Project.

In addition, the St. Regis Tribe and the Longhouse claim a violation of 42 U.S.C. § 1983, alleging that the subject lands were taken under color of law, depriving them of the rights, privileges and immunities secured by the United States Constitution and the various treaties. The complaint also seeks injunctive relief ejecting defendants from the above claimed lands, and damages for (1) fair market rental value, (2) the value of minerals and resources, and (3) waste, pollution and flooding.

## IV. Consolidation

In July 1989, the Canadian Band moved pursuant to Fed.R.Civ.P. 42(a) to consolidate 82–CV–783 and 82–CV–1114 with the St. Regis Tribe's and Longhouse's then-newly filed action, 89–CV–829. In October of that same year, the State, the NYPA and the Municipal defendants filed pre-answer motions to dismiss in all three of these actions—82–CV–783, 82–CV–1114 and 89–CV–829. Thereafter, in August 1991, the court consolidated the three actions. Following consolidation, the court granted a series of stays in order to facilitate ongoing negotiations between the parties. Negotiations broke down, however, and the stay was lifted in September 1996.

In November 1996, by joint motion, the above defendants renoticed their respective motions to dismiss the complaints in all three actions, supplementing the previously filed papers supporting the motions. Thereafter, at the request of the parties, the court stayed the litigation pending the Supreme Court's decision in *Coeur d'Alene Tribe of Idaho v. State of Idaho*, 42 F.3d 1244 (9th Cir.1994), *cert. granted*, 517 U.S. 1132, 116 S.Ct. 1415, 134 L.Ed.2d 541 (1996). As a result of the stay, defendants withdrew their motions to dismiss.

In August 1997, after the Supreme Court rendered its decision in *Coeur d'Al-ene*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), this court directed the refiling of any motions to dismiss. At the request of the parties, the court again issued a series of stays to permit the continuation of settlement negotiations. Negotiations failed in May 1998, and two months later defendants again renoticed their respective motions to dismiss.

## V. Intervention

On August 5, 1998, the United States moved pursuant to Fed.R.Civ.P. 24 to intervene as of right in all three actions as a plaintiff. Although the Municipal defendants took no position on the intervention motion, they reserved the right to raise issues of standing relating to the Canadian Band and the Longhouse. The State defendants opposed the motion and the NYPA apparently took no position. In October 1998, the court granted the motion to intervene (*see* Dkt. No. 166).

The United States' complaint in intervention, filed in December 1998, alleges that the claimed land and islands were acquired in violation of the Indian Nonintercourse Act and the 1796 Treaty with the Seven Nations of Canada. The complaint seeks a declaration that the Indians of the Village of St. Regis hold the right of possession to the subject lands and islands, and damages and other monetary relief for the Indians of the Village of St. Regis.

After agreeing that the previously filed motions to dismiss were applicable to the United States' complaint in intervention, the court directed defendants to resubmit their motions to dismiss and set a new briefing schedule. In July 1999, pursuant to Fed.R.Civ.P. 12(b)(1) and (6), the State, the NYPA and the Municipal defendants filed the instant motions to dismiss all the complaints. The Canadian Band, St. Regis Tribe, Longhouse and the United

States oppose the motions. Oral argument was heard in September 1999.

## FACTS

Akwesasne is the Mohawk name for the area on or near the St. Regis Reservation—a reservation that covers areas located in both the United States and Canada. The St. Regis Tribe is an federally recognized tribe whose members reside primarily on the portion of the St. Regis Reservation located in Franklin County, New York (*see* Complaint (89–CV–829), Dkt. No. 1, ¶ 5). The St. Regis Mohawk Council governs the St. Regis Tribe.

The Longhouse describes itself as " 'an Indian nation or tribe of Indians' within the meaning of the [Nonintercourse Act]" (*id.* ¶ 6). The Longhouse principally reside on the portion of the St. Regis Reservation located in both Franklin County and the Canadian Province of Ontario. The Longhouse is part of the Mohawk Nation and is governed by the Mohawk Council of Chiefs.

The Canadian Band describes itself as "an Indian tribe organized under the laws of Canada ... [whose] members comprise the majority of the decendants [sic] of the Indians of the Village of St. Regis" (*see* Amended Complaint (82–CV–783), Dkt. No. 13, ¶ 4). The Canadian Band resides on the Canadian side of the St. Regis Reservation and is governed by the Canadian St. Regis Band Council (now known as the Mohawk Council of Akwesasne).

Put simply, the Canadian Band, the St. Regis Tribe and the Longhouse all claim to be direct descendants of "the Indians of the Village of St. Regis," and assert a single and undivided interest in the subject land and islands. In other words, the three tribes, with their three different governments, contend that they all sprang from the Indians of the Village of St. Regis. Accordingly, the three tribes assert a continuous ownership and occupation of the subject land and islands since before 1796 and, since that time, a continuous existence as one people sharing a common heritage and social, linguistic, legal, religious and other community ties.

## I. The Original Reservation Land Claim

After the Revolutionary War, member tribes of the Seven Nations of Canada—including the Mohawk villages of Kahnawake and Akwesasne or St. Regis—claimed land located north and south of the St. Lawrence River. The Seven Nations and New York State subsequently negotiated the Treaty with the Seven Nations of Canada, 7 Stat. 55 (1796), wherein the Seven Nations agreed to cede, release and quit claim all rights to land in the State of New York in exchange for specified compensation, with the exception of the reservation of certain lands in New York State for the benefit of the Indians of the Village of St. Regis. Specifically the 1796 Treaty states:

> That the tract equal to six miles square, reserved in the sale made by the commissioners of the land-office of the said state, to Alexander Macomb, to be applied to the use of the Indians of the village of St. Regis, shall remain so reserved . . . .
>
>    \*    \*    \*    \*    \*    \*
>
> [T]here shall [also] be reserved, to be applied to the use of the Indians of the said village of St. Regis, in like manner as the said tract is to remain reserved, a tract of one mile square, at each of the [mills located on the Salmon and Grass Rivers], and the meadows on both sides of the said Grass river from the said mill thereon, to its confluence with the river St. Lawrence . . . .

Treaty with the Seven Nations of Canada, 7 Stat. 55 (1796). It is undisputed that this treaty complied with the Nonintercourse Act.

The above reserved land thus constituted the "original" portion of the St. Regis Reservation located in the State of New York. The current St. Regis Reservation comprises approximately 14,460 acres of the original reservation and is not at issue in these consolidated actions. It is the remainder of the original reservation—reduced by the State through a series of allegedly illegal agreements and transactions—that is the subject of 82–CV–783 and 89–CV–829.

The first claim for relief in the Canadian Band's amended complaint, the St. Regis Tribe and the Longhouse's complaint, and the United States' complaint in intervention, alleges that between 1816 and 1845, the State acquired title and interest to portions of the original reservation by entering into several unlawful agreements with persons purporting to represent the St. Regis Indians (see Amended Complaint (82–CV–783), Dkt. No. 13, ¶ 49; Complaint (89–CV–829), Dkt. No. 1, ¶ 21; Complaint in Intervention, Dkt. No. 167, ¶ 17). Specifically, the three tribes and the United States allege the following seven transactions contravene the Indian Nonintercourse Act and are thus void: (1) a March 15, 1816 "treaty" whereby the State purchased 5,640 acres of the original reservation, (2) a February 20, 1818 "treaty" whereby the State purchased 2,000 additional acres of the original reservation, (3) a March 16, 1824 "treaty" whereby the State purchased the square mile tract on the Grass River consisting of 640 acres of the original reservation, (4) a June 12, 1824 "treaty" whereby the State purchased an additional 1,000 acres of the original reservation, (5) a December 24, 1824 conveyance to the State of 144 acres of the original reservation, with such conveyance purportedly confirmed by the New York Legislature on April 20, 1825, (6) a September 23, 1825 "treaty" whereby the State purchased 840 acres of the original reservation, and (7) a July 21, 1845 "treaty" whereby the State purchased the meadows on the Grass River consisting of 210.04 acres of the original reservation (see id. ¶¶ 50–59; id. ¶ 21A–G; id. ¶ 17A–G). The tribes and the United States claim that defendants and/or their predecessors in interest have possessed the above lands without lawful authority at various times from 1816 to 1845 until the present.

Additionally, the St. Regis Tribe, the Longhouse and the United States allege that defendants and members of the defendant class encroached upon and now wrongfully possesses other lands not mentioned in the above transactions. These additional lands include the surface and right of way of New York State Route 37 and certain portions of the Town of Bombay. The St. Regis Tribe, the Longhouse and the United States assert that these additional lands are part of the original reservation and were taken in violation of the Indian Nonintercourse Act (see Complaint (89–CV–829), Dkt. No. 1, ¶¶ 29–31; Complaint in Intervention, Dkt. No. 167, ¶ 18). The complaint and complaint in intervention also allege that original reservation land was taken in contravention of the Nonintercourse Act when the New York State Legislature passed an Act on April 5, 1810 declaring portions of the Racquette River and St. Regis River in the County of St. Lawrence to be public highways (see id. ¶¶ 33–34; id. ¶ 19).

## II. The Islands Claim

As stated above, after the Revolutionary War the Indians of the Village of St. Regis occupied and used land on both sides of the St. Lawrence River. Additionally, the

tribe claimed islands located in the river—Barnhart Island and another island known at the time as either Croil Island or Baxter's Island. In 1783, the United States and Great Britain entered into the Treaty of Paris, 8 Stat. 80–83 (1783), whereby the northern boundary of the United States was established as being "along the middle" of the St. Lawrence River. Although the treaty left some ambiguity concerning sovereignty over the islands, Barnhart and Croil were generally considered to be located in British North America and not the State of New York and, therefore, were not part of the above 1796 Treaty with the Seven Nations of Canada.

From 1783 to 1814, the Indians of the Village of St. Regis continued to exhibit ownership of the islands and, in fact, leased portions of the islands to others. The War of 1812 ended with the United States and Great Britain signing the Treaty of Ghent, 8 Stat. 218 (1814). Under that treaty, the ambiguous boundary between the United States and Canada was to be resolved by two commissioners, one British and one American. The treaty also provided:

> [I]n case any of the islands mentioned in any of the proceeding articles which were in the possession of one of the parties prior to the commencement of the present war between the two countries, should, by decision [of the commissioners] fall within the dominions of the other party, all grants of land made previous to the commencement of the war, by the party having such possession, shall be valid as if such island or islands had, by such decision or decisions, been adjudged to be within the dominions of the party having had such possession.

8 Stat. 218, 222. Thus, the rights of the Indians of the Village of St. Regis were not to be affected by any resettling of the boundaries. On June 18, 1822, the commissioners determined that the subject islands belonged to the United States. *See* 8 U.S. Stat. 274.

After that determination, the State, apparently ignoring the tribe's occupation and use of the subject land, issued letters of patent conveying title of the islands to various third parties. In 1851, the Commissioners of the Land Office submitted a report to the State Legislature indicating that if the subject islands were in the possession of the United States before the Treaty of Ghent, then the State had no right to make any land grants concerning the islands, and those grants unfairly deprived the St. Regis Tribe of rents they had been collecting on the land. Subsequently, the Legislature passed an act in 1856 granting the St. Regis Tribe $5,960. The amount represented the annual rents the tribe would have collected from 1822 to 1856, plus six percent interest, or alternatively the sum which in 1822 would have extinguished the St. Regis Tribe's title to the islands.

Eventually, the subject islands were acquired by the NYPA, the current possessor of the land. It is the series of conveyances by the State of New York to various individuals, including the NYPA, which allegedly contravene both the Indian Nonintercourse Act and the Treaty of Ghent, thus rendering those transactions null and void with no legal effect (*see* Amended Complaint (82–CV–1114), Dkt. No. 5, ¶¶ 43–50; Complaint (89–CV–829), Dkt. No. 1, ¶¶ 40–45; Complaint in Intervention, Dkt. No. 167, ¶¶ 31–36).

## DISCUSSION

As indicated above, the State, the NYPA and the Municipal defendants' Rule 12(b)(1) and 12(b)(6) motions to dismiss are directed at the amended complaints (82–CV–783 & 82–CV–1114), the complaint

(89–CV–829), plus the complaint in intervention brought by the United States. Defendants' motions variously assert that some or all of the claims alleged must be dismissed on a variety of grounds, including: (1) sovereign immunity, (2) lack of standing, (3) failure to state a claim upon which relief can be granted, (4) the equitable doctrine of laches, and (5) the doctrines of res judicata or collateral estoppel. These issues are taken in turn.

## I. Sovereign Immunity

■ The State broadly asserts that it, as well as the individually named State defendants, enjoy Eleventh Amendment immunity from all claims asserted by the tribal plaintiffs. The State grudgingly acknowledges, however, that this Circuit's decisional law permits tribal plaintiffs to remain in an action where the United States has intervened, so long as the tribal plaintiffs' issues and claims are identical to those made by the United States. *See Seneca Nation of Indians v. State of New York,* 178 F.3d 95, 97 (2d Cir.1999) (per curiam), *aff'g* 26 F.Supp.2d 555 (W.D.N.Y. 1998), *cert. denied,* 528 U.S. 1073, 120 S.Ct. 785, 145 L.Ed.2d 662 (2000); *see, e.g., Arizona v. California,* 460 U.S. 605, 614, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983) (holding that tribes' intervention in action brought by United States against states does not violate Eleventh Amendment because "[t]he Tribes do not seek to bring new claims or issues against the states").

*Seneca Nation* and *Arizona* unmistakably allow the tribal plaintiffs here to circumvent the State's sovereign immunity and remain parties with the United States in this litigation. The question, of course, is whether the tribal plaintiffs' raise the same claims or issues as the United States. If not, those claims must be dismissed. In *Cayuga Indian Nation of New York v. Cuomo,* Nos. 80–CV–930, 80–CV–960, 1999 WL 509442 (N.D.N.Y.1999), this court carefully analyzed *Arizona* when it confronted the like issue of whether the Cayugas raised similar claims and issues as those of the United States. *See* 1999 WL 509442, *12–13. The court stated:

> The Supreme Court in *Arizona* gave no clear guidance as to how to determine whether claims or issues are "new," so as to give rise to possible Eleventh Amendment concerns. The *Arizona* Court did hold, however, that where the Tribes sought to intervene in an action by the United States to adjudicate water rights, the states could "no longer ... assert ...immunity with respect to the *subject matter* of th[at] action." Interestingly, at the same time the *Arizona* Court stated that "[t]he Tribes [were] not seek[ing] to bring new claims or issues against the state," it recognized that in the Tribes' motion to intervene they made "claims for *additional* water rights to reservation lands." ... Thus, as this court reads *Arizona,* "new claims or issues" may be raised in a situation such as that presented therein, so long as those issues or claims encompass the same subject matter as the original claims or issues.

*Id.* at *13 (citations and footnote omitted).

At oral argument, the State contended that this court's *Cayuga* decision reads *Arizona* too broadly, and that dismissal is warranted wherever the tribal plaintiffs' claims are different on their face. For example, the State asserts that the tribal plaintiffs' § 1983 claims must be dismissed because those claims do not appear in the United States' complaint. Dismissal is also mandated, the State argues, wherever the tribal plaintiffs seek different relief than that of the United States. The tribal plaintiffs counter that all the claims and relief sought in this action are similar

enough to survive an Eleventh Amendment challenge.

The State's position is noted, but this court will follow its previous rationale in *Cayuga.* As outlined in the factual history above, the tribal plaintiffs' and the United States' claims here flow from the same subject matter and, thus at least for now, the court holds that the complaints are "virtually identical" for Eleventh Amendment purposes. *See id.* (stating that the Cayugas' and the United States' complaints encompassed the same subject matter and were "virtually identical" so as to defeat Eleventh Amendment immunity regardless of whether the focus was on the issues or claims asserted, the relief sought or the subject matter). Accordingly, the tribal plaintiffs may maintain their current claims and the relief they seek against the State defendants.[8] As in *Cayuga,* the court notes that the State may reassert its sovereign immunity if, down the road, the tribal plaintiffs attempt to raise claims or issues different than those of the United States. *See id.* (stating that if proof at the upcoming trial established that the Cayugas were raising new claims or issues, "the court will cross that bridge if and when it comes to it").

The NYPA asserts that because the State appropriated the islands at issue in this action, the Eleventh Amendment also bars all of the plaintiff tribes' claims against it. Because the tribal plaintiffs' claims against the State are not barred by Eleventh Amendment here, the claims against the NYPA also stand.

## II. Standing of the Canadian Band and the Longhouse

█ Defendants[9] argue that the Canadian Band and the Longhouse lack standing to bring claims under the Indian Nonintercourse Act because that Act only applies to federally recognized tribes located within the United States. With respect to the Canadian Band, defendants assert that the tribe, by its own admission, exists only in Canada and is organized under that country's laws (*see* Amended Complaint (82–CV–783), Dkt. No. 13, ¶¶ 2, 4; Amended Complaint (82–CV–1114), Dkt. No. 5, ¶¶ 2, 4). Thus, defendants contend that the tribe's existence on the Canadian-side of the St. Regis Reservation—coupled with its lack of recognition by the Bureau of Indian Affairs (BIA) as an "American Indian Tribe" and its asserted independence from the St. Regis Tribe and the Longhouse—place the Canadian Band far beyond the protective cloak of the Nonintercourse Act.

Recognizing that the Longhouse claims straddle both sides of the Canadian–United States border, defendants nonetheless argue that the tribe is precluded from asserting any claims under the Nonintercourse Act. Defendants assert that the Longhouse not only lacks BIA recognition but, further, fails the tests set forth in *Montoya v. United States,* 180 U.S. 261, 36 Ct.Cl. 577, 21 S.Ct. 358, 45 L.Ed. 521 (1901), and *Mashpee Tribe v. Secretary of the Interior,* 820 F.2d 480 (1st Cir.1987), to

---

8. By letter dated January 22, 2001, the United States indicated that its current policy is "not to seek any relief from private landowners in its cases involving the New York land claims" and that it "does not need the private landowners in [this] suit to obtain full relief from the State on behalf of the Tribes" (Jakosa Ltr., Dkt. No. 198). The plaintiff tribes' claims are circumscribed in this respect.

9. While only the Municipal defendants advance the following standing arguments, the State defendants and the NYPA adopt this portion of the Municipal defendants' brief supporting the motion to dismiss.

establish whether a group of Indians claiming to be a tribe should be afforded tribal status.

Additionally, defendants argue that policy considerations heavily favor a determination that the Canadian Band and the Longhouse lack standing to assert Nonintercourse Act claims. Contending that the federally recognized St. Regis Tribe can adequately represent the interests of all three plaintiff tribes, defendants argue that allowing the Canadian Band and the Longhouse to pursue Nonintercourse Act claims would seriously undermine the authority of the BIA, and would spawn innumerable lawsuits by "splinter" groups claiming to represent a tribe's interests.

Relying on *Golden Hill Paugussett Tribe of Indians v. Weicker,* 39 F.3d 51 (2d Cir.1994), the Longhouse and Canadian Band forcefully respond that the complaint and amended complaints fulfill both constitutional and prudential standing requirements, and that federal recognition is not dispositive of standing issues. In addition, the two tribes argue that their geographic location is irrelevant inasmuch as the Nonintercourse Act protects *lands* within the United States, and the land sought to be reclaimed by the tribes undisputedly rests in the State of New York.

■■■ "To establish standing in federal court, any party bringing a lawsuit must allege an actual case or controversy." *Deshawn E. v. Safir,* 156 F.3d 340, 344 (2d Cir.1998); *see also Jaghory v. New York State Dep't of Educ.,* 131 F.3d 326, 329 (2d Cir.1997) ("Article III of the U.S. Constitution requires that a 'case' or 'controversy' be present in order to confer jurisdiction on federal courts for a particular claim; standing to sue is an essential component of that requirement.") The term "standing" embodies both constitutional requirements and prudential considerations. *See Warth v. Seldin,* 422 U.S. 490,

498–501, 95 S.Ct. 2197, 2205–06, 45 L.Ed.2d 343 (1975). To satisfy the constitutional minimum of standing, a plaintiff must show an "injury in fact" that is "fairly traceable to the challenged action of the defendant," which "will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (internal quotations and citations omitted). And while the party invoking federal jurisdiction bears the burden of establishing the above elements, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing at the pleading stage. *Id.* at 561, 112 S.Ct. at 2137. This is so because a presumption exists on a motion to dismiss " 'that general allegations embrace those specific facts that are necessary to support the claim.' " *Id.* (quoting *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 889, 110 S.Ct. 3177, 3189, 111 L.Ed.2d 695 (1990)). "The fundamental aspect of standing is that it focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Bordell v. General Elec. Co.,* 922 F.2d 1057, 1060 (2d Cir.1991)(quoting *Flast v. Cohen,* 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968)).

The Longhouse's and Canadian Band's reliance on *Golden Hill* to support their claims of standing is well placed. In that case, the Second Circuit rejected the notion that a plaintiff tribe's standing to assert violations of the Nonintercourse Act was contingent on BIA recognition. *See* 39 F.3d at 57 ("We do not think that either lack of standing or failure to exhaust administrative remedies provides good grounds for the district court's dismissal of plaintiff's suit. First, we note that tribal status for purposes of obtaining federal benefits is not necessarily the same as tribal status under the Nonintercourse Act."). Following the Supreme Court's di-

rection in *Lujan v. Defenders of Wildlife*—that general factual allegations of injury from a defendant's conduct may suffice to show standing at the pleadings stage—the Court determined that the *Golden Hill* plaintiff tribe satisfied the minimum constitutional standing requirements by sufficiently pleading all the elements of a Nonintercourse Act claim. *See id.* at 58. After resolving the standing issue, the Court nonetheless remanded the case to the district court, holding that because the plaintiff tribe had simultaneously petitioned the BIA for recognition and asserted claims in federal court under the Nonintercourse Act, the district court should stay the litigation pending the BIA's decision on tribal status under the doctrine of primary jurisdiction. *Id.* at 60.[10]

Here, like *Golden Hill*, the Longhouse and the Canadian Band's allegations satisfy the minimum Article III standing re-

quirements. The complaint and amended complaints assert that the Longhouse and Canadian Band each directly descend from the Indians of the Village of St. Regis—the tribal entity originally inhabiting the subject lands and islands—and are Indian tribes within the meaning of the Nonintercourse Act. And both tribes' pleadings specifically allege conveyances to defendants of aboriginal and treaty-protected land in contravention of the Nonintercourse Act.[11] Thus, at this "early" stage in the litigation, the two tribes' specific allegations of illegal conveyances entered into by the various defendants, coupled with the aforementioned requested relief, suffice to establish the Article III requirements of injury in fact, causation and redressibility. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. at 560, 112 S.Ct. at 2136.[12]

■ To satisfy the prudential requirements for standing, a plaintiff must assert

---

**10.** Defendants' reliance on *United States v. 43.47 Acres of Land More or Less, Situated in County of Litchfield, Town of Kent*, 855 F.Supp. 549 (D.Conn.1994), for the proposition that BIA must resolve issues of tribal status before a group may commence a federal lawsuit as a "tribe" even where the group has not yet petitioned for federal recognition is unpersuasive. The decision in *43.47 Acres* precedes the Second Circuit's decision in *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51 (2d Cir.1994). The *Golden Hill* Court expressly left open the issue whether the doctrine of primary jurisdiction requires a court to defer to the BIA when, as is the situation here, no recognition application is pending. *See id.* at 60 ("We need not decide whether deference would be appropriate if no recognition application were pending . . . ."), and defendants do not make any specific argument regarding the doctrine of primary jurisdiction here.

**11.** Defendants' contention that the Nonintercourse Act only applies to Indian tribes residing within the United States ignores the principal fact that the United States entered into the 1796 treaty with the "Seven Nations of Canada." The Nonintercourse Act clearly protects Indian *land* within the United States.

*See Mohegan Tribe v. State of Connecticut*, 638 F.2d 612, 619 (2d Cir.1980) (rejecting and calling "historically inaccurate" the state defendant's argument that the "within the bounds of the of the United States" language contained in the Nonintercourse Act was meant to exclude land transactions with tribes residing outside the United States who claimed land within the United States.).

**12.** The Tenth Circuit has stated that Rule 12(b)(1) motions can take two forms—a facial attack on subject matter jurisdiction wherein the district court must accept all allegations as true; or a factual attack on subject matter jurisdiction wherein a district court may not presume the truthfulness of the complaint's factual allegations, and may allow affidavits or other documents to resolve disputed jurisdictional facts. *See Holt v. United States*, 46 F.3d 1000, 1002–1003 (10th Cir.1995). Although it is somewhat unclear what type of attack defendants mount here, the gist of defendants' jurisdictional challenge goes beyond the pleadings. The standing question presented in this case, however, is clearly intertwined with the merits. *See Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58 (2d Cir.1994) ("[T]ribal status for purposes of the

(1) its own legal rights, (2) a particularized grievance in addition to a redressable injury, and (3) a claim that falls within the zone of interests that statute aims to protect or regulate. *See Valley Forge Christian College v. Americans United for the Separation of Church & State, Inc.*, 454 U.S. 464, 474–75, 102 S.Ct. 752, 759–60, 70 L.Ed.2d 700 (1982). Here, both the Longhouse and the Canadian Band satisfy prudential requirements by clearly asserting their right to possess the subject lands and islands under the Nonintercourse Act, linking those assertions to specific alleged illegal conveyances, and declaring that they fall within the protections of the Act. *See Golden Hill Paugussett Tribe of Indians*, 39 F.3d at 58 (determining that plaintiff tribe met prudential requirements by "asserting that it has a right to possess its aboriginal territory, averring that it had a specific, concrete grievance based on allegedly illegal conveyances of the land it claims, and by declaring that it is an Indian tribe, i.e., a group intended to be protected by the Nonintercourse Act . . . .").

The general allegations contained in the two tribes' pleadings thus satisfy both the constitutional and prudential requirements of standing given the procedural posture of this litigation. Accordingly, the Longhouse and Canadian Band's asserted claims under the Nonintercourse Act, as well as their related constitutional and treaty-based claims, suffice to withstand these motions to dismiss. Of course, if defendants contest standing in the future,

the Longhouse and Canadian Band will need to produce specific facts to support these general allegations. *See Lujan v. Defenders of Wildlife*, 504 U.S. at 561, 112 S.Ct. at 2137 ("In response to a summary judgment motion . . . the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence[,] specific facts . . . . And at the final stage, those facts (if controverted) must be supported adequately by the evidence adduced at trial.") (citation and internal quotation marks omitted); *see, e.g., Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, (1st Cir.1979) (noting that the plaintiff tribe bore the burden of proving at trial that it had standing to assert claims under the Nonintercourse Act). The issue of whether the Longhouse and Canadian Band fall within the protection of the Act undoubtedly will prove fact-intensive and, thus, are beyond the purview of these motions to dismiss which confine the court to an examination of the sufficiency of the allegations contained in the pleadings.

Taking a new tack, defendants cursorily argue that the Longhouse's and Canadian Band's lack of federal recognition precludes this court's jurisdiction pursuant to 28 U.S.C. § 1362. It is true that jurisdiction here cannot be invoked under § 1362. That section grants the district courts "original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior . . .," 28 U.S.C.

[Nonintercourse] Act relates to *both* standing to sue under the Act and to the merits of a claim under the Act. The two issues are distinct, though they overlap to a considerable extent.") (emphasis added). If this court followed *Holt*, defendants' Rule 12(b)(1) motion to dismiss would have to be converted into a Rule 12(b)(6) or Rule 56 summary judgment motion. *See* 46 F.3d at 1003 ("[C]ourt is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule

56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case."). Defendants do not argue for this conversion, and the court deems it premature inasmuch as sufficient affidavit and other necessary documentary evidence necessary to decide such a complex factual issue is not before it at this time. Thus, the allegations contained in the complaint and amended complaints are taken as true.

1362, and the two tribes undisputedly do not meet this requirement because they admittedly are not federally recognized tribes. The amended complaints and complaint, however, also allege that subject matter jurisdiction lies pursuant to 28 U.S.C. §§ 1331, 1337, and 1343. Federal question jurisdiction is available here under § 1331. That section provides district courts with original jurisdiction of "all civil actions arising under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Plaintiffs' allegations—that they are successors in interest to the treaty signed by the Indians of the Village of St. Regis, and that their possessory rights and interests have never been extinguished—sufficiently assert a controversy arising under the Constitution, laws or treaties of the United States and, thus, present a federal question for this court's review. *See Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 667, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) ("Given the nature of and source of the possessory rights of Indian tribes to their aboriginal lands, particularly when confirmed by treaty, it is plain that the complaint asserted a controversy arising under the Constitution, laws or treaties of the United States within the meaning of both § 1331 and § 1362.").

## III. Failure to State a Claim

■ As stated earlier, the Nonintercourse Act provides in relevant part that:

No purchase, grant, lease, or other conveyance of lands, or of any title or claim thereto, from any Indian nation or tribe of Indians, shall be of any validity in law or equity, unless the same be made by treaty or convention entered into pursuant to the Constitution ... under the authority of the United States.

25 U.S.C.A. § 177 (1983). In order to establish a *prima facie* case based on a

violation of the Act, "a plaintiff must show that (1) it is an Indian tribe, (2) the land is tribal land, (3) the United States has never consented to or approved the alienation of the this tribal land, and (4) the trust relationship between the United States and the tribe has not been terminated or abandoned." *Golden Hill Paugussett Tribe of Indians,* 39 F.3d at 58 (citing *Catawba Indian Tribe v. South Carolina,* 718 F.2d 1291, 1295 (4th Cir.1983), *aff'd,* 740 F.2d 305 (4th Cir.1984) (en banc), *rev'd on other grounds,* 476 U.S. 498, 106 S.Ct. 2039, 90 L.Ed.2d 490 (1986)); *see also Oneida Indian Nation of New York v. County of Oneida,* 434 F.Supp. 527 (N.D.N.Y.1977), *aff'd,* 719 F.2d 525 (2d Cir.1983), *aff'd in part, rev'd in part,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985).

Again led by the Municipal defendants, defendants argue that their motions to dismiss must be granted pursuant to Rule 12(b)(6) because the Longhouse and Canadian Band fail to make out a *prima facie* case under the Nonintercourse Act. Defendants contend that neither tribe can prove the requisite tribal status and, absent tribal status, neither can prove or plead the required trust relationship with the United States.

A dismissal pursuant to Rule 12(b)(6) is not warranted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making this assessment, the court must presume that the allegations contained in the complaint, and all reasonable inferences that can be drawn from them, are true. *See Woodford v. Community Action Agency of Greene County, Inc.,* 239 F.3d 517, 526 (2d Cir. 2001) (citing *Lee v. Bankers Trust Co.,* 166 F.3d 540, 543 (2d Cir.1999)). Indeed, a plaintiff is not required to prove her case

at the pleading stage and "the pleading of evidence should be avoided." *Woodford,* 239 F.3d at 526 (quoting *Moore's Federal Practice* ¶ 8.13, at 8–68 (2d ed.1989)). The issue on a Rule 12(b)(6) motion is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

Here, the Longhouse's and Canadian Band's allegations suffice to state a claim under the Nonintercourse Act. As established above, the two tribes sufficiently allege that they are Indian tribes within the meaning of the Act. And despite defendants' contrary contention, the tribes also sufficiently allege the required trust relationship. The source of that relationship is the Nonintercourse Act itself, "meaning that the trust relationship pertains to land transactions which are or may be covered by the Act, and is rooted in rights and duties encompassed or created by the Act." *Joint Tribe Council of Passamaquoddy Tribe v. Morton,* 528 F.2d 370, 379 (1st Cir.1975). In order to succeed on the merits, the Longhouse and Canadian Band must eventually prove the critical question of whether they are an Indian tribe within the meaning of the Act. But that question is not before the court at this time.

## IV. Laches

■ Defendants next assert that equitable doctrine of laches bars the tribes' and the United States' claims. In particular, both the Municipal and State defendants urge that neither the Supreme Court of the United States nor the Second Circuit has conclusively determined whether or not laches is available as an equitable defense to Indian land claims brought under the Nonintercourse Act. Defendants contend that in *Oneida Indian Nation of New York State v. Oneida County,* 719 F.2d 525 (2d Cir.1983), *aff'd in part, rev'd in part,* 470 U.S. 226, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985) (*Oneida Indian Nation II* ), the Second Circuit merely rejected a Statute of Limitations defense to Nonintercourse Act claims and, thus, never passed on the issue of laches. Continuing, defendants argue that this court erred by holding in *Cayuga Indian Nation v. Cuomo,* 771 F.Supp. 19 (N.D.N.Y.1991) (*Cayuga VI* ) that *Oneida Indian Nation II* stands for the proposition that timely claims brought by Indian tribes are not barred by laches, and ask this court to reconsider that aspect of *Cayuga VI.*

The court declines this invitation. The issue whether laches is available as an equitable defense to Nonintercourse Act claims, and the very same arguments made here by defendants, were thoroughly examined and rejected by this court in *Cayuga VI.* In that case, this court held that *Oneida Indian Nation II:*

> stands for the proposition that claims brought by Indian tribes in general ... should be held by courts to be timely, and therefore not barred by laches, if, at the very least, such a suit would have been timely if the same had been brought by the United States.

771 F.Supp. at 22. Because there has been no change in the decisional law on this issue since *Cayuga VI,* the court is not inclined to depart from the reasoning of its prior decision.

Applying the language found in *Cayuga VI* to the instant case, it is clear that the tribes' and the United States' claims are timely. 28 U.S.C. 2415 (1994) applies to suits brought by the United States on behalf of Indian tribes. *See Oneida Indian Nation II,* 719 F.2d at 538. Because section 2415(c) provides that no time limitation exists for the United States in actions seeking possession or title, *see id.,* all

of the instant suits here are timely, at least for liability purposes. With respect to money damages, the United States had until December 31, 1982 to file claims that accrued prior to July 1966. *See* 28 U.S.C. § 2415(a)-(b). Additionally, section 2415 provides that Indian claims that are on a list published by the Secretary of the Interior are not barred until (1) a year after the Secretary publishes in the Federal Register a rejection of the claim, or (2) three years after the Secretary submits legislation to Congress revoking the claim. *See id.*

The Canadian Band filed both their actions prior to December 31, 1982 and, thus, those actions are timely under section 2415. Additionally, the St. Regis Tribe asserts that a claim entitled "St. Regis Tribal Non–Intercourse Act Land Claim" was listed by the Secretary in the Federal Register on March 31, 1983 (*see* Opp of St. Regis Mohawk Tribe to Mots to Dismiss, Dkt. No. 193, Exh 1). Apparently this claim has never been rejected; nor has legislation been submitted to revoke the claim. In sum, the tribes' actions would have been timely under section 2415 if brought by the United States and, thus, laches is not available as a defense to defendants.

## V. Res Judicata

Defendants next contend that the doctrine of res judicata bars the tribes' and the United States' claims. Specifically, defendants assert that the tribes and the United States are precluded from litigating the original reservation land claims in this action because the United States, acting on behalf of the St. Regis Tribe, already asserted and lost its Nonintercourse Act claim in *United States v. Franklin County*, 50 F.Supp. 152 (N.D.N.Y.1943). Additionally, defendants contend that *St. Regis Tribe v. State*, 5 N.Y.2d 24, 177 N.Y.S.2d 289, 152 N.E.2d 411 (1958) is res judicata to the present Islands claims.

The doctrine of res judicata, also known as claim preclusion, establishes that:

[A] judgment upon the merits in one suit is res judicata in another where the parties and subject-matter are the same, not only as respects matters actually presented to sustain or defeat the right asserted, but also as respects any other available matter which might have been presented to that end.

*Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 38 (2d Cir.1992) (quoting *Grubb v. Public Utils. Comm'n of Ohio*, 281 U.S. 470, 479, 50 S.Ct. 374, 378, 74 L.Ed. 972 (1930)). Res judicata thus prevents parties from relitigating any ground of recovery or defense that was available to the parties in the original action, even if it was not actually litigated or decided. *See, Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994) (quoting *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)); *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 (2d Cir.1981) (internal citation omitted). In order to prove res judicata, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir.) (citations omitted), *cert. denied*, —— U.S. ——, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000). The party invoking res judicata bears the burden of proving that the second action is barred. *See Computer Assocs. Int'l v. Altai, Inc.*, 126 F.3d 365, 368 (2d Cir.1997), *cert. denied*, 523 U.S. 1106, 118 S.Ct. 1676, 140 L.Ed.2d 814 (1998).

## A. *United States v. Franklin County and the Original Reservation Land Claim* [13]

■ In 1938, the United States acting "on its own behalf and on behalf and as trustee and guardian of the St. Regis Tribe or Band of Indians, located on and/or using, occupying and enjoying the St. Regis Indian Reservation, in the County of Franklin, State of New York," brought an action against Franklin County, New York and the State of New York, among others (*see* Complaint, Sayles Affid., Exh 8). The United States sought, among other things, to restrain and enjoin the assessment, levy and collection of taxes on 10 parcels of land allegedly located within the St. Regis Reservation (*see id.*). The United States claimed that the ten parcels of land in question were located within the original land reserved in 1796 for the St. Regis in the Treaty with the Seven Nations of Canada (*see id.*). The ten parcels were exempt from taxation, the United States asserted, because the 1824 conveyance of 144 acres of land to the State of New York did not have a United States Commissioner present and, as a result, the conveyance violated the Nonintercourse Act (*see id.*). The United States thus claimed that the invalidity of the 1824 conveyance left the subject land in the hands of the St. Regis Tribe (*see id.*).

In contrast, the *Franklin County* defendants contended that the 1824 conveyance was valid and, because they properly held title to the ten parcels, the subject land was taxable (*see* Third Amended Answer, *id.*, Exh 11). The defendants also argued that the Nonintercourse Act did not apply to the conveyance and the presence or absence of a United States Commissioner during the transaction was irrelevant. Agreeing with the defendants, the court dismissed the complaint, concluding that the Nonintercourse Act did not require a United States Commissioner to be present during the 1824 transaction. *See* 50 F.Supp. at 156. The court wrote:

> To require the presence of approbation of a United States Commissioner at the treaty or transaction where the State has the exclusive right to deal with the matter concerned would appear to result in a conflict of legal rights. The evidence shows that the existence of such requirement was not recognized either by the State of New York or by the United States.

*Id.* Finding that New York was effectively exempt from the Nonintercourse Act, the court held that the Act did not apply to the transaction and that the 1824 conveyance was valid. *Id.*

Here, defendants contend that the United States' litigation of *Franklin County* bars the present claims alleging violations of the Nonintercourse Act because the *Franklin County* court specifically held that the 1824 conveyance of 144 acres of land was valid and did not violate the Nonintercourse Act. Defendants contend

---

**13.** Generally res judicata is an affirmative defense to be pleaded in the defendant's answer. *See* Fed.R.Civ.P. 8(c). However, when all relevant facts are shown by a court's own records, of which a court takes notice, the defense may be upheld on a Rule 12(b)(6) motion without requiring an answer. *See Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992) (citation omitted). Here, the court takes judicial notice of the pleadings filed in the *Franklin County* litigation—attached as exhibits to

the Sayles affidavit—as well as the decision rendered in that matter.

Of course, the court is mindful that dismissal on a Rule 12(b)(6) motion is only proper if, after accepting as true all the allegations in the complaint, and drawing all reasonable inferences in the light most favorable to the plaintiff, no set of facts exist which would entitle the plaintiff to relief. *See, e.g., City of Amsterdam v. Goldreyer, Ltd.,* 882 F.Supp. 1273, 1278 (E.D.N.Y.1995) (citation omitted).

that *Franklin County* not only precludes the plaintiff tribes and the United States from relitigating the validity of the 1824 conveyance but, in addition, precludes them from bringing *any* Nonintercourse Act claims relating to the various treaties and conveyances involving the State of New York and the tribes. Defendants reason that res judicata bars any Nonintercourse Act claims in the present litigation because in 1938 the United States knew that a number of treaties between New York State and the St. Regis did not have United States Commissioners present and, thus, in the *Franklin County* action, the United States *could* have challenged the validity of *all* the conveyances made between the parties during years 1816 through 1845.

▆▆▆▆ The plaintiff tribes and the United States argue that res judicata does not apply here because of an intervening change of law—namely *Oneida Indian Nation v. County of Oneida, supra,* a case establishing that, under the Nonintercourse Act, Indian title can only be extinguished *with* federal consent. Additionally, the tribes and the United States assert that *Franklin County* is not res judicata to their present claims because the parties here are not the same parties and/or are not in privity, and the land claim issue was not fully litigated in *Franklin County*. Alternatively, the plaintiff tribes and the United States argue that if res judicata applies here, then *Franklin County* only bars the ten parcels actually at issue in that case. In considering the above arguments, the court will focus on the essential elements of res judicata—a second suit involving the same parties or their privies based upon the same cause of action—and then on the effect of the intervening change in law.

### 1. Identity of Parties

The Canadian Band and Longhouse argue that they were not parties in *Franklin County* and no privity exists between them and the United States. They also contend that an evidentiary hearing will reveal that at the time of the *Franklin County* lawsuit, no single government existed to represent all of the Indians of Akwesasne and, thus, the United States only acted on behalf of the St. Regis Tribe members. Additionally, all three tribes argue that no privity exists with the United States because it only sought to protect the ten individual tax payers in *Franklin County*.

▆▆▆▆ The threshold requirement of identity of parties, qualified by the doctrine of privity, is not merely form but a factual determination of substance. *See Expert Elec. Inc. v. Levine,* 554 F.2d 1227, 1233 (2d Cir.1977). It is clear that literal privity is not a requirement for res judicata to apply. *See Monahan v. New York City Dept. of Corrections,* 214 F.3d at 285 (citing *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 346 (2d Cir. 1995) ("Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions.")). Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation. *Expert Elec. Inc.,* 554 F.2d at 1233 (citation omitted).

As stated previously, the United States brought the 1938 action "on its own behalf and on behalf and as trustee and guardian of the St. Regis Tribe or Band of Indians, located on and/or using, occupying and enjoying the St. Regis Indian Reservation, in the County of Franklin, State of New

York" (*see* Complaint, Sayles Affid., Exh 8). The complaint further states that:

the said St. Regis Tribe or Band of Indians is now located on that certain Indian Reservation known as St. Regis Reservation within the limits of the said County of Franklin and has occupied and had been entitled to occupy said reservation solely and exclusively since the treaty with the United States of May 31, 1796

(*id.* ¶ IV). The United States was obviously a party in *Franklin County,* and privity clearly exists between the United States and the St. Regis Tribe by virtue of the United States' role as trustee. The St. Regis Tribe's argument—that it did not want to participate in the suit—does not alter the fact that *Franklin County* was brought on the tribes' behalf.

An issue exists, however, as to whether the United States represented, or had the authority to represent, the Longhouse and the Canadian Band when it brought the *Franklin County* litigation in 1938. This is important because "the requisite privy must be found in the substantial identity of the incentives of the earlier party with those of the party whom res judicata is asserted." *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d at 346. The question is whether the Longhouse and the Canadian Band had a similar interest in pursuing the tax exempt status of the ten parcels of land in *Franklin County* at the time the United States brought the action. At this early stage in this litigation, it is impossible to ascertain who exactly the United States represented, and whether the two tribes had similar interests at that time. Therefore, this question will have to be resolved after an evidentiary hearing. After such a hearing, this court will be able to accurately determine whether the Canadian Band and the Longhouse were in privity with the United States with respect

to the United States' prosecution of the *Franklin County* case.

### 2. Identity of Claims

█ Privity aside, res judicata only attaches and preclusive effect will only be given if the causes of action in *Franklin County* are identical with those asserted in the present action. Although the determination as to whether claims are duplicative "is not a matter of precision, nor subject to the application of any mechanical formula," *Expert Elec. Inc.,* 554 F.2d at 1234, the general test for deciding the sameness of claims involves whether the same transaction is at issue, whether the same evidence is needed to support both claims, and whether the facts essential to the second were present in the first. *See N.L.R.B. v. United Technologies Corp.,* 706 F.2d 1254, 1259 (2d Cir.1983) (citations omitted). Also pertinent to the identity of claims issue is whether an independent judgment in a separate proceeding would impair or destroy rights or interests established by the judgment entered in the first action. *Sure–Snap Corp. v. State Street Bank and Trust Co.,* 948 F.2d 869, 874 (2d Cir.1991) (quotation omitted).

It is not difficult to conclude that the same claim litigated in *Franklin County* is being litigated in the present action. As indicated in an unrelated opinion by this court, the purported invalidity of the 1824 conveyance of 144 acres from the St. Regis Tribe to the State of New York was the central claim in the *Franklin County* case. *See Thompson v. County of Franklin,* No. 92–CV–1258, 1996 WL 341988 (N.D.N.Y. 1996). Not only is that same 1824 transaction at issue in this case, but the historical evidence and facts marshaled in that earlier litigation will necessarily involve the same evidence presented here by the tribal plaintiffs and the United States. Thus, as relates to the 1824 conveyance of 144

acres, the present action involves the same Nonintercourse Act claim fully litigated earlier in *United States v. Franklin County.*

As indicated above, the defendants argue that because the United States *could* have litigated *all* the transactions between the St. Regis Tribe and the State of New York in the *Franklin County* action, the plaintiff tribes and the United States must now be barred from bringing Nonintercourse challenges against the other treaties and conveyances at issue in this litigation. Defendants reach too far. First, the tribes' and the United States' original reservation claims here entail treaties and conveyances spanning from 1816 to 1845. These other challenged transactions are not the same claim litigated in *Franklin County* because they invariably implicate different historical facts, different treaties, and different evidence. *See, e.g., Expert Elec. Inc.,* 554 F.2d at 1234 ("For it is the facts surrounding the transaction or occurrence which operate to constitute the cause of action, not the legal theory upon which the litigant relies."); *cf., Mashpee Tribe v. Watt,* 542 F.Supp. 797, 799–800 (D.Mass. 1982) (Where a jury found in earlier action that the tribe was not entitled to Nonintercourse Act protection, the plaintiff tribe was barred from relitigating its Nonintercourse Act claims based on same land transactions despite adding different land parcels and defendants to second action), *aff'd,* 707 F.2d 23 (1st Cir.1983) (per curiam). *Franklin County* thus precludes the relitigation here of any Nonintercourse Act claims involving the 1824 conveyance, or any other claim that could have been brought in 1938 relating to that particular conveyance. Its preclusive effect, however, does not extend to the other purportedly invalid treaties and conveyances challenged in this lawsuit. Notwithstanding *Franklin County,* the plaintiff tribes and the United States are free to argue that these other transactions contravene the Nonintercourse Act.

### 3. Intervening Change in Law

In *Federated Dept. Stores v. Moitie,* 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981), a case relied on by defendants, the Court clearly stated that no principle of law or equity exists which sanctions a federal court's rejection of res judicata. More specifically, the Court wrote:

> the res judicata consequences of a final, unappealed judgment on the merits [are not] altered by the fact that a judgment may have been wrong or rested on a legal principle subsequently overruled in a another case.... As this Court explained in *Baltimore S.S. Co. v. Phillips,* 274 U.S. 316, 325, 47 S.Ct. 600, 71 L.Ed. 1069 (1927), an "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of res judicata .... A judgment merely voidable because based upon an erroneous view of law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause of action."

452 U.S. at 398, 101 S.Ct. at 2428 (internal citations omitted). The plaintiff tribes and the United States counter *Moitie* by arguing that *Jackson v. DeSoto Parish School Bd.,* 585 F.2d 726 (5th Cir.1978) and *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499 (11th Cir.1984), among other cases, establish an exception to the general rule that res judicata applies to a final judgment even if the first case was erroneously decided.

It is true that the Fifth Circuit has, in extremely limited circumstances, held that an intervening change in law

nullified the res judicata effect of a prior decision. *See, e.g., Jackson,* 585 F.2d at 729; *Moch v. East Baton Rouge Parish School Bd.,* 548 F.2d 594, 598 (5th Cir. 1977) (both adopting an exception to claim preclusion where a substantial change in constitutional rights involving reapportionment plans occurred); *Christian v. Jemison,* 303 F.2d 52, 54 (5th Cir.1962) (refusing to apply res judicata to a state court judgment that was overruled by *Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) three months later). In the above cases, application of this limited res judicata exception has involved "momentous changes in important, fundamental constitutional rights." *Precision Air Parts, Inc.,* 736 F.2d at 1504. The land claims in this case, grounded in the Nonintercourse Act rather than the Constitution, do not rise to the same level as the fundamental constitutional rights implicated in *Moch, Jackson* and *Jemision* and, accordingly, no intervening change in law exception applies here to the rule of claim preclusion.

In sum, the court concludes that *Franklin County* precludes the United States and the St. Regis Tribe from relitigating whether the 1824 conveyance of 144 acres from the St. Regis Tribe to the State of New York contravened the Nonintercourse Act. Because it is unclear whether the Canadian Band and the Longhouse were privies of the United States when it brought the *Franklin County* action in 1938, an evidentiary hearing will be held to determine that issue. If it is ultimately determined that *Franklin County* does not preclude the Canadian Band and the Longhouse from pressing their Nonintercourse Act claims against the 1824 conveyance, the court will consider any sovereign immunity issues that then may arise as a result of that determination.

**B. *St. Regis Tribe v. State,* 5 N.Y.2d 24, 177 N.Y.S.2d 289, 152 N.E.2d 411 (1958) and the Islands Claim**

In 1954, the St. Regis Mohawk Indians, by individual tribal members and duly elected tribal chiefs, commenced an action against the State of New York in the Court of Claims of New York. The claimants claimed that the State illegally appropriated certain land, including Barnhart Island, and sought damages of approximately $33 million. *See St. Regis Tribe v. State,* 4 Misc.2d 110, 158 N.Y.S.2d 540 (N.Y.Ct.Cl.1956). Specifically, the claimants alleged their original title to the subject land was never extinguished and asserted "immemorial rights arising prior to white occupation, consisting of immemorial possession and use including original title to those rights which are the subject of the appropriation by the State of New York." 158 N.Y.S.2d at 543. The State moved to dismiss the complaint on the grounds that the claimants failed to state a claim, and that the Court of Claims lacked jurisdiction to hear the claim, among others. *See id.*

The Court of Claims denied the motion in all respects, *see id.* at 551, and the State appealed. The Appellate Division, Third Department, reversed and dismissed the claim. *See* 5 A.D.2d 117, 168 N.Y.S.2d 894 (N.Y.App.Div.1957). The claimants then appealed that decision to the New York State Court of Appeals.

Starting in 1783, the Court of Appeals traced the complicated history of ownership of Barnhart Island, including the fact that in 1856 the St. Regis allegedly received payment from the State for Barnhart Island in the amount of $5,960. *See* 177 N.Y.S.2d at 291–97, 152 N.E.2d 411. The court stated "the bare right of occupancy by the Indians" is not a property right that, as a matter of due process,

requires compensation by the State when it takes title to Indian land. *Id.* at 299. The court acknowledged that the State had recognized some rights of the St. Regis Tribe to Barnhart Island, but held that the tribe was duly compensated in 1856 and, thus, had no remaining valid claim to the island. *See id.* at 298, 299. With respect to the Nonintercourse Act, the court noted that it had previously questioned whether that Act applied to the State of New York, and further noted that the *Franklin County* court had in fact held that the State was not subject to the provisions of the act. *See id.* at 300–01. After indicating that no contrary authority to *Franklin County* existed, the court characterized the dispute over Barnhart Island as:

> a situation where the State of New York duly negotiated the Treaty of 1796 with various Indian tribes, including the St. Regis Tribe, in the presence of a Federal Commissioner. Thereafter a dispute arose over the meaning and application of the terms of that treaty. Certainly the State had a right to settle this dispute under that treaty with a legislative grant of compensation .... Thus this was not the negotiation of a new purchase of property from an Indian tribe, but rather the adjustment of a claim that had arisen as the result of the ambiguous language of the 1796 treaty.

*Id.* at 301.

Led by the NYPA, the defendants contend that res judicata precludes the plaintiff tribes and the United States from bringing any claims to Barnhart, Long Sault and Croil Islands because the current claims in this action were litigated and decided in *St. Regis Tribe v. State, supra.* The plaintiff tribes contend that a Nonintercourse Act claim was never brought in that litigation, and that the court never passed upon such a claim. The United States cites various authority for the proposition that the *St. Regis Tribe* decision has no res judicata effect over it because it was not a party to the claim.

▄ With respect to Indian land claims, it is well established that the United States is not barred by res judicata unless it participates in an action. In *United States v. Candelaria,* 271 U.S. 432, 46 S.Ct. 561, 70 L.Ed. 1023 (1926), the United States brought an action in federal court for New Mexico against Candelaria and others seeking to quiet title to certain lands allegedly belonging to Pueblo Indians. *See* 271 U.S. at 437–38, 46 S.Ct. at 561. The *Candelaria* defendants, who allegedly asserted false claims and were fencing the subject land to the exclusion of the Indians, argued that prior state court determinations established that they held good title to the land and, thus, the United States was precluded from bringing any claims challenging title. *See id.* The Court disagreed and held that the United States was not barred by res judicata, reasoning that because Indians are wards of the United States, they are subject to the restriction that their land cannot be alienated without the United States' consent. *See id.* at 443, 46 S.Ct. at 563. The Court stated:

> A judgment or decree which operates directly or indirectly to transfer the land from the Indians, where the United States has not authorized or appeared in the suit, infringes that restriction. The United States has an interest in maintaining and enforcing the restriction, which cannot be affected by such a judgment or decree.

*Id.* at 443–44, 46 S.Ct. at 563; *See, e.g., Privett v. United States,* 256 U.S. 201, 204, 41 S.Ct. 455, 456, 65 L.Ed. 889 (1921) (stating that where the United States sought to cancel conveyances by certain Indians, it was not bound by any judgment where it was not a party).

Here, even assuming that the tribal plaintiffs litigated Nonintercourse Act claims in *St. Regis Tribe*, that decision is not res judicata as to the United States because the United States was not a party to the prior St. Regis litigation. And because the United States may properly assert Nonintercourse Act claims challenging the various conveyances of the subject islands by the State of New York in this action, the issue whether *St. Regis Tribe* is res judicata to the tribal plaintiffs is irrelevant.[14]

## CONCLUSION

After carefully reviewing the parties' submissions, and after hearing oral argument on defendants' motions to dismiss, this court concludes that res judicata bars the United States' and the St. Regis Tribes' Nonintercourse Act claims that relate to the December 24, 1824 conveyance. The other defenses raised by defendants, including sovereign immunity, standing, failure to state a claim motion and laches, are rejected. Accordingly, the motions to dismiss are GRANTED to the extent that the Nonintercourse Act claims by the United States and the St. Regis Tribe challenging the December 24, 1824 conveyance of 144 acres of land are DISMISSED. In all other respects the motions to dismiss are DENIED.

---

**14.** Defendants also cursorily argue that the plaintiff tribes and the United States are collaterally estopped by *Franklin County* and *St. Regis Tribe* from relitigating here the issues decided in those decisions. The doctrine of collateral estoppel, or issue preclusion, holds that where a *different* cause of action is asserted by the same party or its privy in a subsequent proceeding, the prior judgment precludes the relitigation of issues that were "actually litigated and necessary to the outcome" of the first action. *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (emphasis added). Inasmuch as defendants fail to argue that the plaintiff tribes or the United States are asserting *different* causes of actions here than those in *Franklin County* or *St. Regis Tribe,* collateral estoppel is inapplicable.